830 P.2d 516

STATE of Idaho, Plaintiff–Respondent,

v.

Michael PEIGHTAL, Defendant–Appellant.

No. 18855.

Supreme Court of Idaho,
Boise, March 1992 Term.

May 1, 1992.

Daniel P. Featherston, Sandpoint, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Myrna, A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

McDEVITT, Justice.

The defendant appeals from the judgment of conviction for the manufacture of marijuana in violation of I.C. § 37–2732(a), entered pursuant to a conditional plea of guilty in accordance with I.C.R. 11. The defendant argues that the trial court erred by refusing to grant the defendant's motion to suppress evidence—including 482 growing marijuana plants seized pursuant to a search warrant. The only issue raised on this appeal is whether the trial court correctly ruled that the defendant failed to show that the police supplied false information knowingly and intentionally or with reckless disregard for the truth in order to

obtain the search warrant. We hold that there was substantial and competent evidence to support the trial court's findings and conclusions, and affirm the trial court's denial of the defendant's motion to suppress.

An anonymous informant telephoned state drug enforcement officer Dean Roland on January 16, 1990, stating that the defendant, Michael Peightal, was growing marijuana inside his residence in Boundary County. While the informant admitted that he/she had never seen the marijuana plants, the informant said the plants were in defendant's attic, and referred to them as the "mother lode." The informant also stated that the defendant was unemployed but paid cash for everything, and that the defendant smoked marijuana "from the time he gets up until the time he goes to bed."

Officer Roland performed a criminal records check which indicated no criminal history. A check of drivers' license records indicated that a Michael Peightal did reside at the mailing address supplied by the informant. An inquiry to the Idaho State Tax Commission indicated that the defendant had never filed an Idaho income tax return.

Officer Roland and Officer George Gow then investigated the defendant's electricity records, finding that the defendant's low monthly electricity use for 1989 was 2416 KW in July, with a high use of 4663 KW in March. A residential property record from 1986 indicated that the house was heated completely by wood, and that while the house had electric baseboard heaters, they were unhooked. The officers reasoned from this information that the defendant used an unusually high amount of electricity, even in the summer, which would be inconsistent for a home heated by burning wood. The high energy consumption would, their experience indicated, be consistent with growing marijuana with haloid lamps.

Officer Roland, Officer Gow, and Deputy Sheriff Lonnie Ekstrom then observed the defendant's residence, noting that the house was unfinished with the defendant occupying the basement. The officers saw a hand pump watering sprayer and potting soil on the front porch, but did not see any plants around the house. They saw smoke coming from the chimney. There also appeared to them to be black polyurethane plastic covering the windows of the house, a fact consistent with marijuana being grown inside.

On January 18, 1990, a magistrate issued the officers a search warrant based on this information. A subsequent search revealed 482 growing marijuana plants, a "baggie" of processed marijuana, a jar of marijuana "bud," a marijuana cigarette, and a triple beam scale. The defendant was arrested and charged with manufacturing marijuana and failing to purchase a drug tax stamp.

The defendant filed a motion to suppress this evidence, claiming that the officers had either knowingly and intentionally supplied false information to obtain the warrant, or had supplied false information with reckless disregard for whether the information was true. Specifically, the defendant contended that the statements that his residence was heated totally with wood heat and that his windows were covered with black plastic were false.

The trial court denied the defendant's motion to suppress. The prosecutor conceded that the statement regarding the black plastic covering the windows was false, but the trial court found that the defendant had not shown that his residence was not heated totally with wood. The trial court also found that the officers did not knowingly and intentionally or recklessly supply false information to obtain the warrant. The defendant entered into an I.C.R. 11 conditional guilty plea to manufacturing marijuana. The defendant now appeals the trial court's denial of his motion to suppress.

## I. STANDARD OF REVIEW

■ In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court set forth the procedure under the fourth amendment

for a defendant to challenge a warrant based on allegedly false information. This Court adopted the *Franks* approach for art. 1, § 17 of the Idaho Constitution in *State v. Lindner*, 100 Idaho 37, 41, 592 P.2d 852, 856 (1979). According to *Franks* and *Lindner*, a defendant must show by a preponderance of the evidence not only that an affiant made a false statement to obtain a warrant, but also that the affiant either provided the false statement to the magistrate knowingly and intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 171, S.Ct. at 2684; *Lindner*, 100 Idaho at 41, 592 P.2d at 856; *see also State v. Prestwich*, 116 Idaho 959, 962, 783 P.2d 298, 301 (1989).

■ In reviewing the trial court's decision denying the defendant's motion to suppress constitutionally challenged evidence, we will overturn the trial court's factual findings only if they are clearly erroneous. *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989) ("[w]hile we agree that we should freely review whether the trial court correctly applied the law to the facts, we defer to the trial court's findings of fact, unless they are clearly erroneous"); *State v. Kirkwood*, 111 Idaho 623, 625, 726 P.2d 735, 737 (1986) ("findings of the trial court ... should be overturned only if not supported by substantial evidence").

Thus, the defendant had the burden of convincing the trial court that the information challenged in the affidavit was false and that the officers supplied the information either knowingly and intentionally or with reckless disregard for the truth. Unless the trial court committed clear error in reaching its findings as to these issues, we will affirm the motion to suppress.

## II. THE TRIAL COURT'S FINDINGS WERE NOT CLEARLY ERRONEOUS

■ For each challenged piece of information in the affidavit, we must determine whether the trial court committed clear error regarding: (1) the falsity of the information; and (2) whether the officers supplied false information knowingly and intentionally or with a reckless disregard for

the truth. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684; *Lindner*, 100 Idaho at 41, 592 P.2d at 856.

The defendant first challenges the officers' assertion at the probable cause hearing that the defendant's residence was heated 100% by wood. As to this statement the trial court found:

It's not been established that Officer Gow had knowledge of the application or records indicating the electrical heat appliances that were in this house.

I am not so much concerned about whether the electricity was being used at the time. The real question is what the officers knew at the time they went to the Magistrate, not what they learned afterwards or what can be shown afterwards.

I do find it noteworthy—well, I don't think its noteworthy, I think it is to be noted, but it really doesn't matter, but the Defendant doesn't deny in his Affidavit that he doesn't claim to be using great electric heat on a regular basis in significant amounts. It doesn't say that in the affidavit.

In addition, there are some of the photos that would tend to indicate that because of the materials on and near the heater that it's not likely, at least that heater would be in use.

But the officers did have information from the Assessor's Office indicate[ing] 100% wood heat.

Now, admittedly that information is of 1985 or 1986 vintage, but when you look at what the officers have to show to the Magistrate, and that's only probable cause. This is not a hearing where both sides are represented and such as in this hearing where all sides of a given issue are the facts fully brought out. All they have to show is probable cause.

And there doesn't seem to be any dispute here about the actual level of power usage as being sufficient to promote an inquiry.

And the officers did have information that they corroborated by their own visual observation that there was smoke

coming from the chimney concerning wood heat in this case.

So, with respect to the power record issue, although the information was false, that it was—I am not sure it really was false. You know, if there is certainly electric heat available to the home. I don't think it's been shown that home was, during the time in question, was heated with electricity. It certainly could have been, if everything is in working order.

But the officers certainly didn't try to mislead the Magistrate with respect to the electric or wood heat issue. They relied on Assessor's records and for probable cause purposes that was adequate.

It was also not a reckless disregard of the truth.

At the suppression hearing, the officers involved testified that they came to the conclusion that the home was 100% wood heated based upon the assessor's record and by observing smoke coming from the defendant's chimney. While the defendant points out that the assessor's record used by the officers was over three years old, thus attempting to raise the inference that the house could have been using electric heat by the time the warrant was served, there was no testimony that the home was in fact heated with electric heat. The defendant also presented photographic evidence that the house contained wall-mounted electric heaters. However, the defendant provided no other evidence that the electric heaters were operational or that the house was heated by electricity. Indeed, the photographs submitted by the defendant showed that the electric heaters were surrounded by clutter and that one of the heaters had a potentially flammable straw basket on top of it. From this, the trial court could have reasonably inferred that the heaters were not being used. The trial court's finding that the defendant failed to show that his house was not heated exclusively with wood is supported by substantial and competent evidence.

■ The defendant also argues that the officers should have obtained the defendant's application for electric service from Northern Lights Power Company, on which the defendant had written that the house was heated by electricity. The defendant argues that the officers' failure to find this information and present it to the magistrate constituted "reckless disregard for the truth." However, the defendant provided no other evidence that the officers provided false information knowingly and intentionally or recklessly. Given that the defendant himself could have written anything on the application regarding his electricity use, the trial court could have reasonably concluded from the evidence that the officers were not reckless by failing to obtain this application. The trial court's finding that the officers did not knowingly and intentionally or recklessly provide false information regarding the defendant's use of electric versus wood heat is not clearly erroneous.

■ The defendant also challenges the officers' statement that the windows of the house were covered with black polyurethane plastic. The State conceded that this statement was false. Thus, the only question is whether the officers supplied this information knowingly and intentionally or with reckless disregard for the truth. The district court found that:

With respect to the window coverings or lack of black plastic on the windows, that issue, I think again we have some negligence by officers, but I don't think it's intentional for the purpose of misleading the Magistrate.

The evidence here shows the view the officers had was from a distance greater than that in the photographs depicted [in] the defense exhibits attached to the Affidavit.

But even if they did have that access, I have to agree that those windows along that fifty foot—excuse me, along—those windows viewed from the roadway fifty feet away from the [house], that's shown on the diagram that shows where the photos were taken from, even from that distance those windows, except the one that's covered with some kind of blanket, has the appearance of being covered on

the inside, except the one where on the corner where you can see through two windows into the house and then out through another window.

But the officers placed where they were viewing it from was through some trees and at a further distance, and the evidence looking at all the photos does show that the windows are dirty and I think that probably has a lot to do with the reflective circumstance that they observed, especially from the outside and the time of day the officers were looking, viewing into a darkened house would give the appearance and one of the windows looks to have some kind of a very dark curtain on the inside.

So, I think there may have been some negligence involved with respect, to, perhaps, one of the windows, assuming the officers were driving by on this fifty foot public right-of-way, but they weren't driving on that roadway.

Whether they should have driven down that roadway to get a better look, there hasn't been any showing about how obvious this access was, and that they could have proceeded along this access without any danger or issues of trespass coming up. But I don't think there is a showing that the officers intentionally tried to convince the Magistrate that there was black plastic, when, in fact, there was not, and I don't think they are guilty of reckless disregard of the truth.

Our review of the evidence shows that the defendant offered no evidence that the officers provided this information knowingly and intentionally. The defendant argues that the officers were reckless because they did not observe the windows closely enough to see that they were not covered. The trial judge stated that the officers were probably negligent in not making a closer observation, but also noted from photographs of the house that the windows were very dirty, thus appearing unusually reflective, as if they were covered with black plastic on the inside. Under these circumstances, and without more evidence that the officers were reckless, we conclude that the trial court had substantial evidence to find that the officers did not

intentionally and knowingly or with reckless disregard of the truth provide false information about the windows.

Because we hold that the defendant failed to carry his burden at the *Franks* hearing, we need not address any other issues raised by the defendant.

### III.  CONCLUSION

Based on the foregoing analysis, we conclude that the trial court based its findings on substantial and competent evidence. Therefore, we affirm the trial court's denial of the defendant's motion to suppress and affirm the defendant's conviction.

BAKES, C.J., BISTLINE and JOHNSON, JJ., and SCHILLING, J. Pro Tem., concur.