927 P.2d 897

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Herman Clifford KAY, Defendant–Appellant.**

No. 21804.

Court of Appeals of Idaho.

Oct. 30, 1996.

Petition for Review Denied Dec. 19, 1996.

Michael J. Wood, Twin Falls County Public Defender; John A. Olson, Deputy County Defender (argued), Twin Falls, for defendant–appellant.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General (argued), Boise, for plaintiff–respondent.

LANSING, Judge.

Herman Clifford Kay appeals from his judgment of conviction for first degree kidnapping, I.C. §§ 18–4501, 18–4502, and lewd conduct with a child under sixteen, I.C. § 18–1508. The charges stemmed from the abduction and sexual molestation of N.M., a four-year-old girl. Kay alleges that the district court erred in (1) denying his motion to suppress evidence discovered during a search of Kay's home; (2) admitting testimony that a man driving a pickup registered to Kay had exposed his penis to another child earlier on the day of N.M.'s abduction; (3) admitting N.M.'s hearsay statements made to her mother, a police officer and two physicians; (4) denying Kay's motion to disqualify a juror after trial had begun; and (5) denying his motions for judgments of acquittal. We affirm.

## I.

### FACTUAL BACKGROUND

On the evening of July 25, 1993, the parents of N.M., a four-year-old girl, discovered that N.M. was missing. When they called the police, they were told that a woman had found a lost child at an elementary school near their home. That child turned out to be N.M. After N.M. was brought home, her mother began to question her about where she had been. Eventually, N.M. revealed that a man in a brown truck had taken her to a "long, white house," and she said that the man had "sucked on my belly." N.M. also indicated that the man had touched her "privates" and had removed her swimsuit. N.M.'s parents also realized that their daughter no longer had the blue sandals that she had been wearing. The couple then made a second call to the police and told them of N.M.'s statements. They were instructed to take the child to the emergency room at the hospital for an examination.

When they arrived at the hospital, Officer Brian Krear of the Twin Falls Police Department was awaiting their arrival. N.M. told Officer Krear that she had ridden in a "brown" pickup truck with "something over the back" that was white in color and had a door in the back. In further conversation with N.M., Krear determined that she was referring to a white camper shell.

The next morning, Detective Kenneth Dudley of the Twin Falls Police Department was placed in charge of the investigation. Dudley learned that, prior to the abduction, N.M. had last been seen exiting the front door of the home of a playmate, Jessica. Dudley also became aware of a police investigation of an incident in which a man in a maroon pickup exposed himself to a nine-year-old female, L.E., at approximately 4:30 p.m. on the day of N.M.'s abduction. The license number of the vehicle was observed by L.E.'s father, and Detective Dudley found that the vehicle was registered to Herman Kay. Based on this information, Dudley suspected that Kay may have been the man who abducted N.M. Dudley drove to the Kay residence and observed that Kay lived in a white mobile home and that his vehicle was a maroon pickup truck with a white camper shell.

On July 29, 1993, Dudley prepared an affidavit in support of a warrant to search Kay's residence and pickup for N.M.'s blue sandals. The affidavit and a proposed warrant were presented to District Judge Daniel B. Meehl, who issued the warrant. The search was conducted, but the sandals were not found.

Later that same day, Dudley took N.M. and her mother for a drive past Kay's home to see if N.M. recognized the house. When they arrived at Kay's residence, N.M. sat up and stopped talking. N.M. was asked whether she recognized the pickup parked beside the mobile home. She answered that the pickup was "the one in front of Jessica's house."

A few days later, Dudley prepared an affidavit in support of an application for a second warrant to search Kay's pickup and home for N.M.'s fingerprints. Based upon the affidavit, Magistrate Barry Wood issued a second warrant. The ensuing search revealed N.M.'s fingerprints on the toilet in the bathroom of Kay's mobile home.

Kay was arrested and charged with kidnapping and with lewd and lascivious conduct. He was found guilty of both charges following a jury trial. On appeal Kay complains of numerous trial errors and of the district court's denial of Kay's motion to suppress evidence found in the second search of his home.

## II.

## ANALYSIS

### A. Motion to Suppress Evidence

Kay filed a motion seeking to suppress the evidence of N.M.'s fingerprints found in his bathroom during execution of the second search warrant. Kay alleged that the warrant was obtained in violation of the Fourth Amendment to the United States Constitution and Art. I, § 17 of the Idaho Constitution because Detective Dudley's affidavit, upon which the warrant was issued, included intentional or reckless misrepresentations, omitted exculpatory information and included statements for which no source was identified. The district court denied Kay's motion.

■ Applying the Fourth Amendment, in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)[1], the United States Supreme Court held that a criminal defendant is entitled to an evidentiary hearing to challenge the veracity of an affidavit used by the police to obtain a search warrant if the criminal defendant makes a substantial preliminary showing that the affidavit included an intentionally false statement or a statement made with reckless disregard for the truth, and that those statements were necessary to the finding of probable cause.[2] At the hearing, it is the defendant's burden to prove, by a preponderance of the evidence, that intentional or reckless falsehoods were

included in the affidavit and that the false information was material to the magistrate's finding of probable cause. *State v. Guzman*, 122 Idaho 981, 984, 842 P.2d 660, 663 (1992); *State v. Lindner*, 100 Idaho 37, 41, 592 P.2d 852, 856 (1979); *State v. Sorbel*, 124 Idaho 275, 279, 858 P.2d 814, 818 (Ct.App.1993). A false statement is deemed material if without it, probable cause would not have been found. *Id.* If after excluding the false information probable cause is lacking, the search warrant must be voided and the products of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676–77; *Lindner*, 100 Idaho at 41, 592 P.2d at 856.

■ The *Franks* doctrine applies also to a deliberate or reckless omission to disclose exculpatory information to the magistrate. *Guzman*, 122 Idaho at 983–84, 842 P.2d at 662–63; *Sorbel*, 124 Idaho at 279–80, 858 P.2d at 818–19; *State v. Beaty*, 118 Idaho 20, 24–26, 794 P.2d 290, 294–96 (Ct.App.1990); *State v. Jardine*, 118 Idaho 288, 291–93, 796 P.2d 165, 168–70 (Ct.App.1990). An omission of exculpatory facts is material "if there is a 'substantial probability' that, had the omitted information been presented, it would have altered the magistrate's determination of probable cause." *Sorbel*, 124 Idaho at 279–80, 858 P.2d at 818–19.

■ Unlike intentional or reckless falsehoods, negligent or innocent misrepresentations will not invalidate a warrant, and such information may be considered in reviewing the affidavit for probable cause. *Lindner*, 100 Idaho at 41, 592 P.2d at 856. Therefore, an important distinction must be made between misinformation which is presented negligently and that which is submitted intentionally or with reckless disregard for the

---

1. The Idaho Supreme Court has adopted the *Franks* analysis in applying Art. I, § 17 of the Idaho Constitution. *See State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992); *State v. Lindner*, 100 Idaho 37, 41, 592 P.2d 852, 856 (1979).

2. It appears that the defendant here was allowed an evidentiary hearing without making this threshold showing. The motion to suppress simply stated that probable cause was missing from

the face of the affidavit upon which the warrant was issued. The record reveals no specific allegations, in advance of the hearing, of deliberate or reckless falsehoods or omissions. Although the prosecutor complained during the hearing about lack of notice of the specific attacks on the affidavit, he made no argument that defense counsel had failed to comply with the procedural requirements set forth in *Franks*, and the State does not complain of the procedure on appeal.

truth. Whether a representation is false and whether a misrepresentation was made knowingly and intentionally or with reckless disregard for the truth are factual determinations that we review under a clearly erroneous standard. *State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992); *State v. Rigoulot*, 123 Idaho 267, 270–71, 846 P.2d 918, 921–22 (Ct.App.1992). Whether a misrepresentation or omission is "material" is a question of law over which we exercise free review. *Sorbel*, 124 Idaho at 280, 858 P.2d at 819; *Beaty*, 118 Idaho at 26–27, 794 P.2d at 296–97.

■ We turn now to the affidavit submitted to Magistrate Wood in support of the application for a second warrant to search Kay's residence. The relevant portion of Detective Dudley's affidavit states:

On Sunday, July 25, 1993, [L.E.] and her younger brother were walking their dog in the City and County of Twin Falls, State of Idaho. While walking in front of her house, she noticed a "purplish-brownish" pickup drive by her. As she walked a block or so the pickup pulled up along side of her and the driver asked her a question. She could not hear him and walked to the passenger side of the truck. As she looked in, she saw a man, described as an old guy with stubble and grey hair, holding his penis in his hand. He asked her if she knew where Johnson's were. She said no and walked away. Her brother and she made it to the alley and this same driver and truck pulled up and blocked her way. Again he asked if she knew where the Johnson's were, the children ran home. The girl told her father . . . who then got into his car and followed the man in the truck and got the license plate number 2J8522, maroon or dirty brown in color, 69 or 70 Chevy or GMC with white camper shell. The plate was run through police teletype and came back registered to Herman Clifford Kay.

On Sunday, July 25, 1993, at 350 Elm Street, located in the City and County of Twin Falls, State of Idaho, [N.M.], a 4 year old female, was walking home from a friend's house at approximately 1900 hours, when a man in a maroon pickup with a white camper shell stopped and picked her up and placed her in the pickup. She described the suspect as an older man with glasses and stubble. He took her to a house she described as long and white. Inside this home the man took off her swimming suit, put his finger inside her vagina, then licked her vagina, and then put her swimsuit back on. He then drove her back to Bickel School and dropped her off. [N.M.] was missing her shoes which she said were left at the mobile home. Her shoes are blue sandals of a suede texture, children's size 6–8.

On Thursday, July 29, 1993, affiant was driving in the area of 2563 E 3200 N in the County of Twin Falls, State of Idaho, and observed the above-described pickup in front of the above-described mobile home. Affiant checked with the farmer who owned the property, W.T. Evans, Jr., who advised me that Kay lived at that residence and worked for him. During that discussion Evans advised me that Kay was not at work Sunday, but he did come home at approximately 1900 hours and left about one-half hour later.

On Thursday, July 29, 1993, at approximately 2015 hours, your affiant and Detective Tim Miller contacted [N.M.] and her mother . . . at their residence. Your affiant asked [N.M.'s mother] if she would allow us to take her and [N.M.] for a ride past a possible location of the "long white house". No comments were made to [N.M.] about the reason for the ride. [N.M.'s mother] agreed and she and [N.M.] rode in the front seat of the vehicle. As we approached the location of Kay's trailer, [N.M.] sat upright in her mother's lap and stopped talking. [N.M.] also identified the pickup as the one that "was in front of Jessica's house" where she was taken from.

On Monday, August 2, 1993, affiant was advised that while [N.M.] was in the home of Herman Clifford Kay she used the bathroom.

Affiant would request that a Search Warrant be issued for the vehicle and mobile home of Herman Clifford Kay so that fingerprints can be obtained.

Kay asserts that the affidavit contains several intentionally or recklessly false representations. First, Kay argues that Dudley's affidavit implies that N.M. stated that a "man in a maroon pickup with a white camper shell stopped and picked her up and placed her in the pickup." We agree that this statement is impliedly attributed by Dudley to N.M. It is uncontroverted that N.M. told Dudley that the pickup was "brown" and never described it as "maroon" to anyone. The district court made the factual finding that this false statement was, at most, negligently made. We are unable to sustain this finding. In our judgment, to falsely indicate that the complaining witness gave a color description different from that actually given and to falsely imply that she identified the same color as that of the suspect's vehicle is, at the least, reckless. Therefore, the word "maroon" must be deleted from the sentence at issue in reviewing the affidavit for probable cause.

Kay next argues that Dudley recklessly implied that N.M. said the pickup had a "camper shell" even though the child did not use those words. The district court held that if this statement was false, it was made negligently and was not an intentional or reckless misrepresentation. At the suppression hearing, Dudley admitted that N.M. said nothing to him personally about a white camper shell. However, he testified that he had relied upon Officer Krear's report of N.M.'s statements made on the night of the abduction. While the report has not been provided to this Court on appeal, it was placed into evidence at the suppression hearing, and Dudley testified that the report "states that [N.M.] reported a brown pickup with a camper shell as being the one she was placed into." This evidence supports the district court's holding that any misleading implication about N.M.'s discussion of a camper shell was only negligent. Therefore, the statement will be in-

cluded in our review of the affidavit's sufficiency to demonstrate probable cause.

Kay next attacks the portion of the affidavit that states, "[N.M] also identified the pickup as the one that 'was in front of Jessica's house' where she was taken from." Kay argues that this was misleading because N.M. said only that the pickup was in front of Jessica's house and did not indicate that she was abducted at that location. Indeed, the police never determined the location at which N.M. was picked up. The district court held that inclusion of the words "where she was taken from" was negligent. The record supports this finding. Although Dudley's statement that N.M. was abducted near Jessica's house was only an assumption, the police knew that she had been at Jessica's home shortly before she was taken. It was reasonable for Dudley to infer that she was abducted at that location. The affidavit should have explained this inference instead of impliedly attributing the information to N.M. However, we cannot say that this mistake rises to the level of reckless or intentional misconduct.

In addition to the foregoing findings regarding false statements in Dudley's affidavit, the district court also found that Dudley had deliberately or recklessly omitted exculpatory information from the affidavit. These omissions were: (a) Detective Dudley's failure to disclose that in looking at a photo lineup, L.E. was unable to identify Kay as the man who exposed himself to her, and (b) Detective Dudley's failure to inform the magistrate that Kay's residence had already been searched for N.M.'s missing sandals pursuant to an earlier warrant, and that the sandals were not found.[3] The district court's findings regarding these omissions, which are not challenged on appeal, must be taken into account when we evaluate the sufficiency of the affidavit to demonstrate probable cause.

---

3. The district court's decision stated, "As a police detective with 18 years of experience, Dudley most certainly knew his duty to present all relevant facts to Judge Wood, including those which would tend to exculpate the defendant." This statement that all "relevant" information must be presented, which is perhaps drawn from language in this Court's opinion in *Beaty*, 118 Idaho at 25, 794 P.2d at 295, is an overly demanding standard. *Franks* protects against reckless or intentional omissions of "exculpatory" information, which does not encompass all facts that are merely relevant. It is impractical to impose a duty upon warrant applicants to present *all* facts that are somehow relevant. Any implication of such a duty in *Beaty* is disapproved.

Finally, we note that the district court found deficiencies in the affidavit in addition to *Franks* violations. Relying on *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983) and *State v. Crabb,* 107 Idaho 298, 302, 688 P.2d 1203, 1207 (Ct.App.1984), the district court held, that the portion of the affidavit that states, "On Monday, August 2, 1993, affiant was advised that while [N.M.] was in the home of Herman Clifford Kay she used the bathroom" should be disregarded because the affidavit does not identify the source of the information that N.M. used the bathroom and does not provide information on the unknown source's veracity or basis of knowledge.[4] Since this conclusion is not contested by the parties, we will accept the district court's determination and will exclude that statement in making our assessment as to whether probable cause was shown.

Having determined that there are statements in Detective Dudley's affidavit which must be disregarded and that exculpatory information was improperly omitted, we must examine whether, after correcting these flaws, the affidavit still demonstrates probable cause, i.e., a "fair probability" that N.M.'s fingerprints could be found in Kay's residence. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). We have accepted the district court's holding that no consideration should be given the statement that "On Monday, August 2, 1993, affiant was advised that while [N.M.] was in the home of Herman Clifford Kay she used the bathroom." We have also found one intentional or reckless misrepresentation—the assertion that N.M. described the pickup as "maroon." After both of these statements are deleted, we conclude that the remaining information in the affidavit still provides probable cause to believe that N.M. had been in Kay's home and vehicle and, hence, that her fingerprints could be found there.

We must proceed next to consider the exculpatory information that was intentionally or recklessly omitted from the affidavit.

These omissions were Dudley's failure to reveal that L.E. could not identify Kay when presented with a photo lineup and his failure to disclose the previous unsuccessful search for N.M.'s missing sandals. We agree with the district court's conclusion that, if this information had been included, the magistrate's finding of probable cause would not have been altered. There was unchallenged information in the affidavit indicating that the man who exposed himself to L.E. was driving a pickup registered to Kay. Given that information, probable cause to believe that Kay was involved in that incident is not vitiated by the fact that a nine-year-old child could not identify a photo of Kay as the perpetrator. With respect to the prior search for N.M.'s sandals, there is no evidence or allegation that any effort to find fingerprints was made during the first search. Therefore, the first search would not have revealed the only evidence that the second search sought to produce. Although Dudley should have disclosed both of these points of exculpatory information to the magistrate, we cannot say that if the information had been revealed, there is a substantial probability that the warrant would not have been signed. Consequently, the omitted information does not meet the *Franks* standard of materiality.

Under the totality of the circumstances, after modifications are made to correct the *Franks* violations and to exclude evidence challenged for lack of attribution to any reliable source, Detective Dudley's affidavit still provided probable cause for the issuance of the warrant. Accordingly, the district court's denial of Kay's motion to suppress the fingerprint evidence found in the search is affirmed.

**B. The Testimony of L.E. and Her Father**

■ Kay next asserts that the district court erred in admitting at trial the testimony of L.E. and her father. L.E. testified that a gray-haired man in a pickup had stopped L.E. and her brother and tried to engage her in conversation. Looking

4. In addition to identifying no source, we note that the portion of the affidavit stating that "[N.M.] was in the home of Herman Clifford Kay" is flatly conclusory and assumes the very fact that the proposed search sought to prove—that N.M. had been in Kay's residence.

through the pickup window, L.E. saw that the man was holding his exposed penis in his hand. L.E. described the pickup as "purplish-maroon" in color with a white camper shell. She identified a photograph of Kay's vehicle as the pickup in question. L.E.'s father testified that his daughter ran home and described the incident. When L.E. spotted the pickup on a nearby street, her father got into his own truck and gave chase. He testified that the driver of the pickup had gray hair and a bristly face. He described the pickup as "reddish purple" or "plum" in color with an orange-striped white camper shell bearing the license plate number that was later found to be registered to Kay. L.E.'s father also identified a picture of Kay's pickup as the pickup he had followed. Kay argues that this testimony was inadmissible because there was insufficient evidence to identify Kay as the man who engaged in the contact with L.E.

This testimony of L.E. and her father could be relevant in Kay's trial for offenses against N.M. only if Kay was the man in the pickup who confronted L.E. Analysis of the admissibility of this evidence therefore requires application of Idaho Rule of Evidence 104(b) which provides: "Whenever the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or in the court's discretion subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Under this rule, the necessary "condition" to the relevancy of L.E.'s testimony and that of her father was Kay's identity as the pickup driver, and the admissibility of their testimony turned upon "the introduction of evidence sufficient to support a finding of" that identity.

In applying Federal Rule of Evidence 104(b), the United States Supreme Court concluded that a trial court considering proffered evidence, the relevance of which is conditioned on a fact, "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988). *See also Estelle v. McGuire,* 502 U.S. 62, 73–74, 112 S.Ct. 475, 482–83, 116 L.Ed.2d 385, (1991). Idaho Rule of Evidence 104(b) is nearly identical to the corresponding federal rule,[5] and we find the Supreme Court's analysis in *Huddleston* to be persuasive. Therefore, we examine the sufficiency of the evidence linking Kay to the L.E. incident. The descriptions of the perpetrator given by L.E. and her father fit Kay's general appearance, and the license plate on the pickup was registered to Kay. This was sufficient evidence upon which the jury could reasonably conclude that Kay was the man in the pickup. The district court was therefore correct in overruling Kay's objection that the evidence was insufficient to identify Kay as the person who exposed himself to L.E.

Kay also contends this same testimony was inadmissible under I.R.E. 404.[6] The district court found it admissible pursuant to I.R.E. 404(b) because it was probative of Kay's identity as the person who abducted N.M. We agree with this determination.

The circumstances presented here are similar to those involved in *State v. Abel,* 104 Idaho 865, 664 P.2d 772 (1983). In that case the Idaho Supreme Court considered whether charges arising from two separate attacks on women, occurring on the same day, were properly joined for trial. The Court held that joinder would be permitted if, were the offenses tried separately, evidence of one crime would be admissible in the trial of the other. *Id.* at 868–69, 664 P.2d at 775–76. Because similarities in the offenses, including

---

5. The words "in the court's discretion" found in I.R.E. 104(b) do not appear in F.R.E. 104(b).

6. Idaho Rule of Evidence 404 states in pertinent part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, ...

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

temporal and geographic proximity, similar descriptions of the assailants, and commonalities in the manner of the attacks, made evidence of each offense relevant to the identity of the assailant in the other case, the Court held that evidence of each offense would be admissible at a separate trial of the other. *Id.* at 869, 664 P.2d at 776. In *Abel* the Court approved the following statement from *Bradley v. United States,* 433 F.2d 1113, 1120–21 (D.C.Cir.1969):

> The rule admitting proof disclosing another crime to show the accused's identity as the perpetrator of the offense on trial does not demand that the two episodes possess factual sameness in every detail. The inquiry, rather, is whether the two have enough in common to justify a cautious judgment that the probative force of the common details received in evidence is appreciable, and so much so as in the scheme of jurisprudential values to outweigh the potential harm to the accused.

*Abel,* 104 Idaho at 869–70, 664 P.2d at 776–77.

In the present case, Kay's identity as the man who abducted and molested N.M. was the primary issue at trial. The L.E. incident and N.M.'s abduction were temporally and geographically close, occurring about three hours apart and within a few city blocks of N.M.'s home. The L.E. incident was linked to Kay by the license number on the pickup, and the witnesses' descriptions of the pickup and driver generally matched those given by N.M. Finally, there were commonalities in the nature of the occurrences, each involving a man in a pickup contacting unaccompanied children on the street. In light of these links between the two incidents, and the evidence indicating that Kay was the man who confronted L.E., we hold the testimony of L.E. and her father was admissible under I.R.E. 404(b) because it was probative of Kay's identity as the man who abducted N.M.

 Finally, Kay asserts that this testimony should have been excluded under I.R.E. 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The balancing assessment required by I.R.E. 403 is committed to the discretion of the trial court. *State v. Enno,* 119 Idaho 392, 406, 807 P.2d 610, 623 (1991); *State v. Matthews,* 124 Idaho 806, 809–10, 864 P.2d 644, 647–48 (Ct.App.1993). The district court correctly recognized this determination to be one of discretion and applied appropriate legal standards and reasoning in weighing the competing interests at issue. *See State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). We therefore find no abuse of discretion in the district court's ruling that the testimony was admissible under the standards of I.R.E. 403.

## C. N.M.'s Out–of–Court Statements to Her Mother and a Police Officer

 The next issue concerns the admissibility of out-of-court statements made by N.M. to her mother and to Officer Krear. Over hearsay objections, the district court admitted the statements under the excited utterance exception, I.R.E. 803(2).

N.M.'s mother and Officer Krear were permitted to testify about statements N.M. made after being returned to her parents on the night of the abduction. N.M.'s mother testified to statements made by N.M. at home and during the ride to the emergency room. Officer Krear testified about what N.M. told him when he interviewed her that same evening at the hospital. Together, the two witnesses related that N.M. stated she had been taken by a man in a brown truck to a long, white house; that the man had removed her swimming suit, "sucked on her belly" and touched and kissed her between her legs; that he was an older man with gray hair and glasses; that the pickup had something white on the back that was determined to be a camper shell; and that the man said that he would bring N.M.'s sandals back to her later.

Rule 803(2) authorizes the admission of hearsay that is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Our Supreme Court has held that for the excited utterance hearsay exception to apply, the trial court must make two initial factual determinations. "First, there must be an oc-

currence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *State v. Parker,* 112 Idaho 1, 4, 730 P.2d 921, 924 (1986), *quoting* E. Cleary, McCORMICK ON EVIDENCE, § 297 (3d ed. 1984). *See also State v. Stover,* 126 Idaho 258, 263, 881 P.2d 553, 558 (Ct.App.1994). If there is sufficient evidence to support a finding of these foundational requisites, the admission of an excited utterance, as a hearsay exception, is left to the sound discretion of the trial court. *State v. Bingham,* 116 Idaho 415, 421, 776 P.2d 424, 430 (1989). In making this discretionary ruling, the trial court reviews the totality of the circumstances, including the nature of the startling event and the demeanor of the declarant when making the statement. *Stover,* 126 at 263–64, 881 P.2d at 558–59.

■ Kay argues that there was no indication that N.M. was under the stress of excitement caused by a startling event when the statements were made. He points to testimony establishing that N.M. was calm and not crying when she made the statements to her mother and to Officer Krear. We disagree with the proposition that, under the circumstances of this case, the child's calm exterior makes the excited utterance exception inapplicable. In *Parker,* our Supreme Court stated that in sex crime cases, the admission of the victim's statements under the excited utterance exception is given broader application than in other cases. The Court held:

> The tendency to admit such statements, even when made hours after the event, probably lies in their high probative value. Given that sexual assault crimes violate one's most intimate physical and mental feelings, the victim can reasonably be expected not to discuss the crime until meeting with a family member, close friend, law enforcement agent, or other trusted individual.
>
> . . . .
>
> A sexual assault is one of the most distressing experiences a person could have.

The distress is likely to remain bottled up in the victim until she or he can talk about what happened.

*Parker,* 112 Idaho at 4, 730 P.2d at 924. We would add that, in evaluating whether the declarant was under the excitement of the event when the statement was made, and whether the statement may have been the product of reflective thought, the court may take into account the age of the declarant and whether the statement was self-serving. *Compare Parker, supra,* and *Stover,* 126 Idaho at 262–64, 881 P.2d at 557–59, with *State v. Burton,* 115 Idaho 1154, 772 P.2d 1248 (Ct.App.1989).

Here, N.M.'s mother testified that, upon her daughter's return home, there were dried tear tracks on the child's face and she was unusually subdued and quiet. N.M. at first evaded her mother's questions and would only speak when coaxed. Similarly, when Officer Krear first began to question N.M., she would not look at the officer and would not answer the officer's questions. Instead, N.M. would "curl up next to her mother and hang onto her mother." The district court could properly find that N.M.'s demeanor demonstrated that she was troubled and evidenced the "bottling up" of emotions recognized in *Parker.* It does not, as argued by Kay, conclusively establish that N.M.'s statements were the product of reflective thought. We find no abuse of discretion in the district court's determination that N.M. was under the stress of her abduction and molestation when she made the statements to her mother and to Officer Krear and that her statements were therefore admissible under I.R.E. 803(2).

**D. Statements for Medical Diagnosis or Treatment**

■ Over defense counsel's hearsay objections, Dr. Kevin Kraal, an emergency room physician, and Dr. Barton Adrian, a pediatrician, were allowed to testify to statements made by N.M. during the course of medical examinations. Each physician related N.M.'s descriptions of what had occurred during the molestation.

I.R.E. 803(4) allows the admission of hearsay statements made "for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the source thereof insofar as reasonably pertinent to diagnosis or treatment." Kay's argument focuses not upon the language of this rule itself but upon the generally acknowledged rationale behind this hearsay exception, that "the declarant's motive to disclose the truth because his treatment will depend in part on what he says, guarantees the trustworthiness of the statements." Report of Idaho State Bar Evidence Committee, C. 803, p. 6 (1983). *See also, White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 742–43, 116 L.Ed.2d 848 (1992); *Gonzales v. Hodsdon,* 91 Idaho 330, 332, 420 P.2d 813, 815 (1966); *Hillman v. Utah Power & Light Co.,* 56 Idaho 67, 76, 51 P.2d 703, 706 (1935). This is sometimes referred to as the "selfish interest" rationale. Kay argues that the prosecution did not show that N.M., a child of four years and two months, appreciated the importance of speaking truthfully to her doctors, and that, consequently, N.M.'s statements to the doctors were not demonstrated to fall within the Rule 803(4) exception.

Where an adult is the hearsay declarant, the motive to speak the truth to a physician in order to advance a self-interest in obtaining proper medical care for the declarant or another is generally assumed. However, as the Supreme Court of Ohio observed when presented with an argument similar to that advanced here, a "dilemma arises in attempting to apply to children evidentiary rules which were drafted with adults in mind." *State v. Dever,* 64 Ohio St.3d 401, 596 N.E.2d 436, 440 (1992).

The foundation that must be established by the proponent of evidence offered under I.R.E. 803(4) is specified within the language of the rule. The proponent must show: (1) that the statements were "made for purposes of medical diagnosis or treatment"; (2) that the statements described "medical history, or past or present symptoms, pain, or sensations, or the source thereof"; and (3) that the statements were "reasonably pertinent to diagnosis or treat-

ment." Kay's position that the doctors' testimony was inadmissible in this case presupposes that because the declarant was a young child, the prosecution was required to lay the further foundation that N.M. was cognizant of the need to speak truthfully to her physicians. Proof of such an awareness is not required as a matter of foundation when the declarant is an adult, and in our view it is inappropriate to impose a differing foundational rule where the declarant is of tender years. Instead we conclude, as did the court in *Dever, supra,* that the trial court should consider the totality of the circumstances surrounding the hearsay statement to determine whether a young child's statement was "made for purposes of medical diagnosis or treatment." The court may consider any factors which bear upon the likelihood that the child made the statement for this purpose, including evidence indicating whether the child understood the need to speak truthfully to the physician and factors that otherwise indicate the reliability of the statements. Circumstances to be considered may include: the child's age; whether the child understands the role of the physician in general; whether the child was suffering pain or distress at the time; whether the child's statements were inappropriately influenced by others, as by leading questions from the physician or a previous suggestive interrogation by another adult; whether the examination occurred during the course of a custody battle or other family dispute; the child's ability and willingness to communicate freely with the physician; the child's ability to differentiate between truth and fantasy in the examination itself and in other contexts; whether the examination was initiated by an attorney (which would suggest that its purpose was for litigation rather than treatment); and the timing of the examination in relation to the trial. If the trial court finds that the foregoing factors, and others reasonably related to the inquiry, give little reason to doubt the child's motivation, the court may infer that the criteria of I.R.E. 803(4) are met.

Applying the foregoing analysis in the present case, we find that several factors support the trial court's determination that N.M.'s statements were made for purposes of diagnosis or treatment. N.M.'s abduction

and the consequent medical examinations were not associated with any domestic dispute, and there was no apparent motivation for any of the involved adults to try to influence N.M.'s story. Both physicians testified that N.M. readily answered questions, and Dr. Adrian commented that she was very vocal and had excellent language skills. Both physicians testified that they used simple, open-ended, non-leading questions whenever possible. Finally, both examinations took place shortly after the abduction and were conducted at the hospital, where even a four-year-old child can be expected to realize that health care is the focus. Although the child's age is an important factor, we are unwilling to hold as a matter of law that a child of four years and two months cannot be motivated to give information for purposes of medical diagnosis or treatment.

■ Kay also asserts that N.M.'s hearsay statements to her doctors should have been found unreliable and therefore inadmissible, because she was found to be incompetent to testify at the preliminary hearing and because the child's statements were elicited for "prosecutorial reasons." We are not persuaded. First, a child's inability to cope with the rigors of testifying in a formal courtroom setting, an experience that is intimidating to many adults, does not *ipso facto* establish that the same child is incapable of speaking truthfully in a less formal conversation with a doctor. Second, there was no evidence that the physicians elicited information from N.M. for purposes of facilitating prosecution. Rather, the physicians testified that they needed to know the details of where and how N.M. was touched by her abductor in order to determine whether there was possible injury or exposure to venereal disease.

Considering the totality of the evidence, we conclude that the district court did not err in admitting N.M.'s statements made to the two physicians under I.R.E. 803(4).

### E. Motion to Disqualify Juror

■ Kay next contends that the district court erred in denying his motion to disqualify a juror for cause pursuant to I.C.R. 24(a). During a break in the trial testimony of N.M.'s mother, one of the jurors notified the

district court that she recognized N.M.'s mother from an evening sales class that both were attending. The district court conducted ·a hearing at which both counsel were allowed to question the juror. In response to this examination, the juror stated that, if she voted to acquit and later had to face the alleged victim's mother, "It's not going to bother me." The juror indicated that the two women had never had a personal conversation, and that the situation would not affect her view of the mother's testimony. At the conclusion of the hearing, the district court denied defense counsel's motion to disqualify the juror and replace her with an alternate. Kay contends that the denial of his motion constituted reversible error.

It is within the trial court's discretion to determine whether a juror can render a fair and impartial verdict. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Here the potential for juror bias was carefully explored, and, based upon the totality of the information given by the juror, no bias was demonstrated. Therefore, the district court did not abuse its discretion in denying Kay's request to disqualify the juror.

On appeal, Kay also alleges that the district court's refusal to excuse the juror violated his right to an impartial jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, § 17 of the Idaho Constitution. This constitutional argument was not advanced to the district court below, and therefore it will not be addressed on appeal. *State v. Wheaton*, 121 Idaho 404, 407, 825 P.2d 501, 504 (1992).

### F. Motion for Judgment of Acquittal

■ Kay's final claim of error is that the district court erred in denying his I.C.R. 29(a) motion for a judgment of acquittal at the close of the prosecution's case. Kay argues that evidence presented by the State was insufficient to identify him as the person who kidnapped and molested N.M. In addition, Kay asserts that, as to the kidnapping charge, there was insufficient evidence that he intended to detain N.M. against her will.

■ A motion for acquittal is properly denied if there is substantial evidence upon

which a rational trier of fact could conclude that the defendant's guilt as to each material element of the offense has been proved beyond a reasonable doubt. *State v. Erwin,* 98 Idaho 736, 740, 572 P.2d 170, 174 (1977); *State v. Matthews,* 124 Idaho at 813, 864 P.2d at 651. In making this determination, the trial judge is to weigh the evidence in the light most favorable to the State, recognizing that full consideration must be given to the right of the jury to determine the credibility of witnesses, the weight to be afforded evidence, and the inferences to be drawn from the evidence. *Erwin,* 98 Idaho at 740, 572 P.2d at 174; *State v. Huggins,* 103 Idaho 422, 427, 648 P.2d 1135, 1140 (Ct.App.1982). On review of the denial of a motion for a judgment of acquittal, the appellate court freely reviews the record, drawing all inferences in favor of the State, to determine whether there was substantial evidence to support the challenged conviction. *Matthews,* 124 Idaho at 813–14, 864 P.2d at 651–52.

On the identity issue, the State's evidence was clearly sufficient to defeat the defendant's motion for a judgment of acquittal. The State presented evidence that N.M.'s fingerprints and palm prints were found on the toilet in the bathroom of Kay's residence. Detective Dudley testified that N.M. had identified Kay as the kidnapper, picking his photo from a photo lineup conducted a few days after the abduction. N.M.'s description of the pickup in which she had been abducted was consistent with the general appearance of Kay's pickup, and her description of the house to which she was taken as a "long, white house" with "long weeds," matched photographs showing that Kay's residence is a long, white mobile home with tall weeds surrounding it. Finally, the testimony of L.E. and her father further substantiated the identification of Kay as the perpetrator.

We next consider Kay's assertion that there was a lack of evidence to support the State's allegation in the information that

he acted with the intent that the victim be "kept and/or detained against her will." *See* I.C. § 18–4501(1).[7] A person's intent may be proved by his acts and conduct, and that is the usual and customary mode of proving intent. I.C. § 18–115; *Ex parte Seyfried,* 74 Idaho 467, 470, 264 P.2d 685, 687 (1953); *State v. Bronson,* 112 Idaho 367, 369, 732 P.2d 336, 338 (Ct.App.1987). In this case N.M. was taken without her parent's permission and was subjected to acts of sexual molestation. Viewing this evidence in the light most favorable to the State, the jury could properly infer that Kay intended to keep or detain N.M. against her will. Therefore, the district court did not err in denying the motion for judgment of acquittal on the basis of lack of evidence of intent.

### III.

### CONCLUSION

Herman Clifford Kay's judgment of conviction for first degree kidnapping and for lewd and lascivious conduct with a minor child under sixteen is affirmed.

WALTERS, C.J., and PERRY, J., concur.

---

7. This issue need not have arisen, for the prosecutor could have charged Kay under Section 18–4501(2), which provides that every person who wilfully "[l]eads, takes, entices away or detains a child under the age of sixteen (16) years, with intent to keep or conceal it from its custodial parent, guardian, or other person having lawful care or control thereof," is guilty of kidnapping. However, the prosecutor here did not rely upon that subsection but instead, alleged that the defendant "did wilfully kidnap, seize, take, detain and/or entice away [N.M.] ... with the intent to cause her to be kept and/or detained against her will."