**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44463**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Unpublished Opinion No. 643** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: November 15, 2017** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **RUSSELL DALE HILTERBRAN,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick H. Owen, District Judge.

Judgment of conviction for one count of attempted strangulation and one count of domestic violence with traumatic injury, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

A jury found Russell Dale Hilterbran guilty of one count of attempted strangulation and one count of domestic violence with traumatic injury. Appealing from his judgment of conviction, Hilterbran asserts that the district court abused its discretion when it admitted hearsay statements made by the alleged victim to a forensic nurse under Idaho Rule of Evidence 803(4). Hilterbran argues the court erred because the totality of the circumstances surrounding the statements indicated they were not made for purposes of medical diagnosis or treatment. For the reasons explained below, the judgment of conviction is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State presented evidence that Hilterbran battered his sixty-three-year-old significant other, C.S. In the midst of an argument, Hilterbran jumped on C.S. and grabbed her face, applying enough force to leave a bruise on her jawbone. Hilterbran then moved his hand down to C.S.'s throat and choked her until she lost consciousness. These facts were the basis for one of the two counts of attempted strangulation and the single count of domestic violence that the State decided to prosecute.[1]

At trial, C.S. testified that in the days following the incident, her neck and throat "hurt real bad." Two days after the incident, C.S.'s daughter took her to the Family Advocacy Center and Education Services (FACES) facility for a medical evaluation due to this persistent throat and neck pain. C.S.'s description of what happened at the FACES facility was succinct: she underwent a physical examination during which she spoke with the nurse about her injuries.

The State then sought to introduce C.S.'s statements to a hospital nurse at FACES. Hilterbran objected on, inter alia, hearsay grounds, arguing that the statements were not covered by the medical diagnosis or treatment exception codified in Idaho Rule of Evidence 803(4). Hilterbran's reasoning was that because the nurse's interview was of a forensic nature, meaning it involved preserving evidence for future use by law enforcement and prosecutors, it was not for a medical purpose. The district court allowed Hilterbran to voir dire the nurse by asking questions in aid of the objection.

During the voir dire examination, the nurse testified as to what role she played at FACES and also provided details regarding this case in particular. The relevant portions of the testimony are as follows:

Q: And maybe tell us what does a forensic nurse do.
A: So a forensic nurse has several duties. Basically we're on call, so our team is on call 24/7. So the nurse that is on call, if a patient of sexual assault or domestic violence comes in, then they will call us in to do what we call a forensic exam. And it's twofold. It's to clear and triage the medical patients, the medical needs of the patient and get them the referrals and resources they need. We're also

---

[1] Not all of the charges in the information were prosecuted at trial. The charges in the information included: (1) two counts of attempted strangulation; (2) one count of domestic violence; (3) two counts of aggravated assault; (4) two counts of domestic battery; and (5) one count of violation of a no contact order.

trained in the forensic aspect where we can collect evidence, we can photograph injuries and document them.

. . . .

Q: And so maybe the better question is if somebody has reported that they've been strangled but you don't see any external marks or injuries, are you done at that point?

A: No.

Q: Okay. And why is that?

A: Well, because there may be things that I don't see so I need to ask specific questions to elicit responses from the patient to find out if they have any kind of problems with breathing, for instance.

. . . .

A: My primary purpose is to assess the victim to find out if they need any medical attention . . . .

Q: So is your primary purpose medical in nature?

A: Yes.

Q: And is your primary purpose in gathering information from somebody who you are seeing for a forensic exam to gather information for the purpose of diagnosis and treatment medically?

A: Yes.

. . . .

Q: And I understand--obviously you said that oftentimes evidence that you or things that you document, injuries that you document, photographs that you take and those sorts of things may be beneficial in a prosecution.

A: They may be, but they're also beneficial to medical because if--if, for instance, an injury is continuing to swell or the bruising extends, that's important medically.

Q: So does everything that you do in your forensic exams have a medical component?

A: Yes.

. . . .

Q: What's the medical purpose for asking a victim what happened?

A: Well, first of all, it helps guide me in my exam to make sure that I don't overlook something that was really important in the history of the patient. And then we do a medical history; we find out what kind of medications they're on; we find out what their past surgical history is. Then we do a head-to-toe assessment of the body.

. . . .

Q: Stepping back just real quick, talking about symptoms that a person is feeling. Do you also ask about any symptoms or pain that a person is feeling at the time of your examination?

A: Yes.

Q: And why is that important to you to know?

A: Well, I want to know if something's getting better or if something's getting worse.

. . . .

Q: Did she see the physician at FACES?

3

A:      Yes, she did.
Q:      When did she see that physician?
A:      That same day.  I actually referred her to see [the Physician].

After conclusion of the nurse's voir dire testimony, the district court determined that the hearsay exception for medical diagnosis or treatment applied, noting, "[F]rom the perspective of the nurse, her primary role is in determining the proper steps for medical diagnosis and treatment."

At the conclusion of the trial, the jury found Hilterbran guilty of felony domestic violence and of one count of attempted strangulation, while acquitting him on the second attempted strangulation charge.  The district court entered a judgment of conviction, from which Hilterbran timely appealed.

## II.

## ANALYSIS

The trial court has broad discretion in determining the admissibility of testimonial evidence.  *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990).  A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion.  *Id.*  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason.  *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994).  Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court.  I.R.E. 802.  The Idaho Rules of Evidence provide an exception for "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the source thereof insofar as reasonably pertinent to diagnosis or treatment."  I.R.E. 803(4).  The rule is premised on the assumption that such statements are generally trustworthy because the declarant is motivated by a desire to receive proper medical treatment and will therefore be truthful in giving pertinent information to the physician.  *See State v. Kay*, 129 Idaho 507, 518, 927 P.2d 897, 908 (Ct. App. 1996).  Accordingly, where an adult is the hearsay declarant, the motive to speak the truth to a physician

in order to advance a self-interest in obtaining proper medical care for the declarant or another is generally assumed. *Id.* To determine whether a statement was made for purposes of medical diagnosis or treatment, courts must examine the totality of the circumstances. *See id.*

The parties agree in their briefing that the issue on appeal is whether, under the totality of the circumstances, the statements were made for purposes of medical diagnosis or treatment. Hilterbran argues that because the nurse served a forensic purpose in addition to a medical purpose, under the totality of the circumstances, C.S's statements to the nurse do not qualify for the medical diagnosis or treatment exception to the hearsay rule. The State asserts that the totality of the circumstances shows that C.S. made statements intended to assist in diagnosis and treatment of her throat and neck pain to a medical professional whose primary purpose was medical in nature. We hold that the district court did not abuse its discretion in admitting the testimony under I.R.E. 803(4).

The totality of the circumstances indicates that the nurse's examination was for the purpose of medical diagnosis or treatment, even though there also existed a forensic purpose. The nurse testified that she conducted physical examinations to locate latent injuries. This, she explained, required her to ask questions regarding the circumstances surrounding the injury and any symptoms arising from the injury. She also testified that the photographs she took could be used to monitor any changes in bruising or swelling. The examination also served to alert the nurse as to whether she needed to refer the patient to a physician. Because C.S. was complaining of persistent throat and neck pain to a medical professional, the statements were clearly made for purposes of medical diagnosis or treatment.

Hilterbran argues that other facts overshadow the nurse's medical purpose. He highlights the fact that C.S. had already been to a doctor before going to FACES, was referred to FACES by a police victim witness coordinator, and had her visit paid for through a Department of Justice grant. If these facts were sufficient to preclude the admittance of statements under I.R.E. 803(4), statements made in normal hospitals by crime victims would be denied the benefit of the rule because forensic nurses are present in many hospitals and police refer victims to hospital emergency departments. Moreover, injuries may cause persistent or delayed symptoms, which could result in multiple doctor visits. These facts do not transmute a statement made for medical diagnosis or treatment into something else.

5

Because we hold that the statements were properly admitted under I.R.E. 803(4), we do not address the State's argument that some of the statements were excepted from the hearsay rule under I.R.E. 803(3).

### III.

### CONCLUSION

Because the challenged statements were made by the declarant for the purposes of obtaining medical diagnosis or treatment to a medical professional who relied on the statements for the same purposes, the district court properly admitted them pursuant to I.R.E. 803(4). The judgment of conviction for one count of attempted strangulation and one count of domestic violence with traumatic injury is affirmed.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.