846 P.2d 918

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Louis RIGOULOT, Defendant–Appellant.**

**No. 19246.**

Court of Appeals of Idaho.

July 2, 1992.

Rehearing Denied Dec. 11, 1992.

Petition for Review Denied March 2, 1993.

Fred R. Palmer, Sandpoint, for appellant.

Larry J. EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., argued, Boise, for respondent.

WALTERS, Chief Judge.

Louis Rigoulot pled guilty to possession of a controlled substance, marijuana. I.C. § 37–2732(c)(1). He reserved his right under I.C.R. 11 to challenge a pre-trial order denying his motion to suppress marijuana found in a search of the home in which he was temporarily living. On appeal, he argues that the warrant authorizing the search was procured with false and inaccurate information intended to mislead the magistrate. He also asserts that the district court wrongly found that while outside the home the police properly observed incriminating evidence within. We affirm.

### Facts and Procedural Background

Rigoulot challenges the information presented orally by the Bonner County Prosecuting Attorney to support issuance of the search warrant. The information was presented at 2:15 p.m. on the same day the prosecutor received the information by telephone from the police officers in the field. The facts are as follows.

On October 1 or 2, 1990, an anonymous tip was received that someone was growing marijuana in the Clark Fork area of the county, several miles up Dry Creek road. As the prosecutor recounted to the magistrate, on October 2, 1990, Officer Scott of the Idaho Department of Fish and Game in Bonner County responded to the tip and found the marijuana patch. He called Agent Gow of the Bonner–Boundary County Narcotics Task Force, told him of the find, and stated that as he approached the grow area he saw an adult male run from the patch, through the bushes and down a hill. At about 10:00 a.m.° that morning, Agent Gow and others investigated and found the marijuana patch consisting of 145 plants. They also found "a well-worn" "bike type trail" heading in the direction in which the man fled. To help track the person, Agent Gow called Deputy Narwold of the Bonner County Sheriff's Office, who responded with a search dog. When applying for the search warrant, the prosecutor told the magistrate that the officers:

took the dog to the scene of the marijuana patch and this trail and the [sic] then the dog followed the trail on down the hill and through the woods and it leads directly to the Lee York residence that I've just described.

Officer Gow and the other officers followed the dog down to that location. As they came out into the opening which is very near to the house, Officer Gow advised that he could smell the very distinct aroma of growing marijuana emanating from the house or outbuildings.

At that time, they did not proceed into or near the buildings themselves. They did go to a power pole which is located near this trail and on that power pole is a meter and they took the meter number off and that meter is registered to the service of Lee York.

The magistrate questioned whether the dog followed the man's scent or a visible trail. The prosecutor responded that

He probably would follow either. In this case, we don't know which he was following. The trail itself apparently was fairly visible. They were not sure it was going to be and the dog was originally called there to see if he could follow the human that had run from the woods as Officer Scott approached. Officer Gow does not know if the dog followed the human or just followed the trail as did the officers.

When asked if it was a "distinct trail" leading from the patch to the house, the prosecutor replied affirmatively.

While the officers were awaiting the warrant, Rigoulot arrived at the York house after reportedly spending the day seeing a doctor in town. After the officers learned that he was living in the York home, they arrested him and charged him with manufacture and possession of a controlled substance and with failure to obtain a drug stamp.[1]

Agent Gow and the prosecutor did not testify at the suppression hearing. However, the prosecutor who had applied for the warrant was the one who also presented

---

1. The manufacturing and drug stamp charges subsequently were dismissed pursuant to a plea

agreement following the court's denial of Rigoulot's motion to suppress.

the state's case at the suppression hearing. Rigoulot, Deputy Narwold and Agent Ron McLaughlin of the Bonner–Boundary County Task Force, who was also involved in the operation, did testify.

Rigoulot's primary point of contention at the hearing concerned the use of the word "trail" to describe what were actually bicycle tire tracks which the officers traced from the patch, through the bushes, down the hill in the direction the man had fled, along the side of a gravel road, very close past a home owned by a person named McGhee, and finally ending at the York house. A ten-speed bicycle had been found at the marijuana patch and the tires were said to match the tire markings leading to the York home, although no castings were made to confirm the observation. The tire tracks did not turn at the McGhee home. Rigoulot maintained that the word trail, used without qualifying information, was intended to mislead the magistrate in that the term suggested a short, established walking path from the marijuana patch to the home. Rigoulot contended that Agent Gow deliberately omitted the fact that the trail was actually the single track of a ten speed bicycle which ran alongside an established gravel road for 2.7 miles until it ended at the York home.

Rigoulot also disputed the information supporting the warrant based on the testimony of Deputy Narwold and Agent McLaughlin. In obtaining the warrant, the prosecutor implied that the officers had followed the dog to the York home. However, Deputy Narwold later testified that the dog had tracked the scent to the McGhee residence, where he rested and watered the dog and then ended his involvement in the search because he had been told that the bicycle tracks had been traced to the York house.

Agent McLaughlin testified that when at the home the officers reportedly walked up to the sliding glass door that was the only entrance, knocked and yelled to see if anyone was home, and *then* smelled a strong odor of growing marijuana—not when they were away from the home as the magistrate was told.

### 1. Statements Supporting the Warrant

█ The first issue we address is whether the district court erred when it determined that the warrant was not obtained with intentionally false and inaccurate information. When a defendant challenges a warrant with the assertion that it was procured with false information, he must show by a preponderance of the evidence that the false information was included in the warrant affidavit knowingly and intentionally, or with reckless disregard for the truth. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *State v. Lindner,* 100 Idaho 37, 41, 592 P.2d 852, 856 (1978); *State v. Beaty,* 118 Idaho 20, 24 n. 1, 794 P.2d 290, 294 n. 1 (Ct.App.1990); *State v. Wright,* 115 Idaho 1043, 1047, 772 P.2d 250, 254 (Ct.App.1989). This rule also applies to relevant information allegedly wrongly omitted with the intent to mislead the magistrate. *State v. Beaty,* 118 Idaho at 24–25, 794 P.2d at 294–95; *United States v. Ritter,* 752 F.2d 435, 439 n. 1 (9th Cir.1985). However, negligent or innocent misrepresentations, even if necessary to establish probable cause, will not invalidate a warrant. *State v. Lindner,* 100 Idaho at 41, 592 P.2d at 856. If information is presented to the magistrate negligently or innocently, the information must be included in the court's consideration of the totality of the circumstances in determining whether the magistrate had a substantial basis to find probable cause. *State v. Schaffer,* 107 Idaho 812, 820, 693 P.2d 458, 466 (Ct.App. 1984). On the other hand, if false information was given intentionally or with reckless disregard for the truth, it must be set aside and the magistrate's finding of probable cause must be reviewed upon the remaining evidence. *Id.*

█ When, in response to a motion to suppress, a district court has ruled that "mere negligent representations" were made in support of a search warrant issued by a magistrate, and the district court's findings are supported by substantial, albeit conflicting, evidence, they will not be disturbed on appeal. *State v. Burke,* 110

Idaho 621, 627, 717 P.2d 1039, 1035 (Ct. App.1986); *State v. Forshaw*, 112 Idaho 162, 165, 730 P.2d 1082, 1085 (Ct.App.1986). Whether false statements or omissions are intentional or reckless is a factual finding reviewed under the clearly erroneous standard. *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir.1988), *cert. denied, Dozier v. United States*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *United States v. McQuisten*, 795 F.2d 858, 863 (9th Cir. 1986); *Ritter*, 752 F.2d at 439.

■ The district court found that any false or inaccurate information was given to the magistrate negligently, in that Agent Gow, who was busy coordinating efforts at the scene, was at the same time calling the prosecutor on the telephone to provide the information to be relayed to the magistrate. The court stated:

> we also have to appreciate that as in this case things started as a hot pursuit issue, and when that's happened that different operations are going on at the same time and Gow, by the evidence, dispatching people to pull the plants from the patch and organize the information to present a Search Warrant and at the same time secure an area to be searched at a time when there is a person physically there arriving and the officers at the scene, all of these events demonstrate that how and why miscommunications of the sort that occurred here, but certainly nothing more than negligence is involved and nothing upon which to say that this search should be ruled to have been unconstitutional.

When Agent Gow and others were called to the scene, their immediate reaction was to try to find the man who had fled after seeing Officer Scott. After tracing the bicycle tracks to the York home, they called off the dog search, observed the home, and called in the information for the warrant. Although the prosecutor implied that the officers followed the dog all the way to Rigoulot's home, the prosecutor also revealed to the magistrate that Agent Gow was unsure if the dog was following a

scent or a visible trail—a trail also very visible to the officers. Aware of the uncertainty, the magistrate still found probable cause to issue the warrant. Even excising that disputed statement from the application does not render the warrant invalid. Other information supported probable cause, for instance, that the dog "tracked" in the direction the man had fled, that the trail followed the same route, and that it was unwavering and easily followed to the home. Further, the officers detected the strong odor of growing marijuana coming from within the home when they approached.[2]

That the length of the trail was not revealed to the magistrate does not invalidate the warrant. It is clear from the record that Agent Gow was attempting to obtain correct distances from the grow area to Dry Creek and the home to Dry Creek so that the locations could be pinpointed for the magistrate. The failure to communicate to the magistrate that the grow area was 2.7 miles from the home may have been negligent, but in the face of other information connecting the different locations, the negligence was not critical to a finding of probable cause.

Further, information presented to the district court on the motion to suppress only bolsters the magistrate's conclusion. Officer McLaughlin's report—offered into evidence by Rigoulot—indicated that at least one marijuana plant was seen growing near the home and was trimmed in the same way as those at the grow area. Plastic planting pots and plastic sheeting, the same as found at the grow area, were found at the home. Also, testimony revealed that a ten-speed bicycle was found at the grow site, whose tires resembled the markings made in the dirt trail to the York house where Rigoulot was living. Based on the foregoing, we hold that the district court's findings were not clearly erroneous.

#### 2. Observations at the Home

■ The next issue is whether the district court erred when it found that the

---

**2.** Officer McLaughlin testified that the house "reeked" with the odor of marijuana and that

Officer Gow had remarked that he, too, could smell marijuana.

officers did not conduct a search when they smelled marijuana at the house. The state correctly points out that the magistrate issued the warrant based on the information that the officers had found a marijuana patch consisting of 145 plants, that they followed an undiverging trail to the house, the house was in the direction the man had fled, the officers had identified the house by the registration of the power meter, and that Agent Gow smelled the distinct odor of growing marijuana "without proceeding into or near the buildings themselves."

First, Rigoulot argues that the officers had invaded the curtilage of the home and had conducted an illegal search when they smelled the marijuana. According to Officer McLaughlin's testimony at the hearing, after they had walked to the house and were knocking on the sliding glass door, it was "from that vantage point" he and Agent Gow could smell marijuana and it was not until after this act that Agent Gow called the prosecutor and applied for the search warrant. Rigoulot asserts that this testimony reveals an intentional misrepresentation was made to the magistrate, and later an illegal search conducted because the officers had walked past a "No Trespassing" sign. The district court found mere negligent communication and no search at all. We agree with the district court.

■ Curtilage is defined as the area or buildings immediately adjacent to a home which a reasonable person may expect to remain private, even though it is accessible to the public. W.R. LaFAVE, SEARCH AND SEIZURE § 2.3(d), at 402, n. 105 (2nd ed. 1987) *citing Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) and § 2.3(f), p. 410–11, *citing Wattenburg v. United States,* 388 F.2d 853 (9th Cir.1968). It has been held that absent exigent circumstances, a warrantless search of one's home or its curtilage, when effected through trespass, violates Fourth Amendment prohibitions against unreasonable searches and seizures. *United States v. Van Dyke,* 643 F.2d 992, 993 (4th Cir. 1981); *United States v. Jackson,* 585 F.2d 653, 659 (4th Cir.1978) *citing Katz v. Unit-*

*ed States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, a trespass by itself does not constitute an illegal search. *United States v. Jackson,* 585 F.2d at 660 *citing Atwell v. United States,* 414 F.2d 136 (5th Cir.1969). A trespass is only relevant to the extent it represents an invasion of a person's reasonable expectation of privacy. *Id.*

■ Posting "No Trespassing" signs may indicate a desire to restrict unwanted visitors and announce one's expectations of privacy. *See State v. Kelly,* 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct.App. 1984). However, such signs cannot reasonably be interpreted to exclude normal, legitimate, inquiries or visits by mail carriers, newspaper deliverers, census takers, neighbors, friends, utility workers and others who restrict their movements to the areas of one's property normally used to approach the home. *State v. Corbett,* 15 Or.App. 470, 516 P.2d 487, 490 (1973). A criminal investigation is as legitimate a societal purpose as any other undertaking that would normally take a person to another's front door. *Id.* "If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so." *Id.* In other words, when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places ordinary visitors could be expected to go, observations made from such vantage points are not covered by the Fourth Amendment. *LaFAVE, SEARCH AND SEIZURE* § 2.3(f), at 412–13. This is especially true when the officers are, as in this case, in "warm" pursuit of a suspect. In their approach to a sliding glass door, the officers were occupying an area of the curtilage which would normally be occupied by ordinary visitors, that is, an area outside the house adjacent to an entrance.

■ Further, the officers' observations—smelling marijuana—did not constitute a search. Similar to the plain view doctrine which addresses lawfully viewed items, no search in the Fourth Amendment

sense occurs when an officer, lawfully present at a certain place, detects odors emanating from a private premises. *La-FAVE, SEARCH AND SEIZURE* § 2.2(a), at 327, *citing United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (search warrant properly based in part on allegation that agents smelled fermenting mash in vicinity of suspected home). "There is no 'reasonable expectation of privacy' from lawfully positioned agents' with inquisitive nostrils.'" *Id., citing United States v. Johnston,* 497 F.2d 397 (9th Cir.1974). Based on the foregoing, the fact that the prosecutor told the magistrate that the officers had smelled marijuana before they approached the home is not dispositive.

### Conclusion

Misstatements were made to the magistrate during the warrant application. However, the district court's finding that these errors were negligently made is supported by substantial evidence and is not clearly erroneous. The denial of the motion to suppress is affirmed.

SWANSTROM and SILAK, JJ., concur.