861 P.2d 1266

STATE of Idaho, Plaintiff–Respondent,

v.

Bonnie Joan PICK, Defendant–
Appellant.

No. 20255.

Court of Appeals of Idaho.

Oct. 25, 1993.

Bruce H. Greene, Sandpoint, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for plaintiff-respondent. Douglas A. Werth argued.

PERRY, Judge.

This is an appeal from the district court's order affirming Bonnie Pick's judgment of conviction for misdemeanor driving under the influence (DUI). Pick contends, as she did before the district court, that her arrest was invalid and that the results of the field sobriety tests obtained after she was seized by the arresting officer should have been suppressed upon her motion. We affirm.

The facts surrounding the arrest are as follows. On the evening of December 6, 1991, Officer Mike Hutter of the Sandpoint City Police Department observed a pickup truck weaving in its own lane. Suspecting that the driver, later identified as Pick, may be driving while under the influence, Hutter followed the truck to the Bonner Mall parking lot. Knowing that the Bonner Mall was outside his jurisdiction, Officer Hutter contacted Bonner County Deputy Sheriff Richard Bailey. Officer Hutter informed Deputy Bailey of his observations. Deputy Bailey met Hutter at the mall, and Hutter pointed out the vehicle that Pick had been operating. Bailey then observed Pick drive out of the Bonner Mall parking lot and enter Highway 95. Bailey followed. Not far from the mall entrance, Pick pulled over to the side of the road and stopped her vehicle to talk with a friend, who was leaning into the truck through an open passenger door when Deputy Bailey pulled up behind the truck.

Deputy Bailey turned on his vehicle's rear amber flashing lights when he parked behind Pick's truck, then got out of his vehicle and went to speak with Pick. He asked Pick, through the open driver's window, if she was having problems with her truck. When she denied any problems and responded that she had just stopped to talk with a friend, Deputy Bailey detected the smell of alcohol on her breath and observed her physical condition. He inquired whether she had been drinking, and she admitted having a couple of beers. He then asked her to perform field sobriety tests and to produce her driver's license. As a result of the field sobriety tests and Deputy Bailey's observations, Pick was arrested and charged with misdemeanor driving under the influence.

Pick filed a motion requesting the magistrate to suppress the results of the field

sobriety tests. The motion was denied after an evidentiary hearing. The magistrate entered specific findings and conclusions designating the point when Pick was seized for purposes of the Fourth Amendment. The relevant findings and conclusions were as follows:

3. No seizure of the Defendant's person occurred when Deputy Bailey pulled his patrol vehicle behind her on the side of the roadway due to the fact that the Defendant's vehicle was already stopped.

4. No seizure of the Defendant occurred when the officer turned on his rear amber deck light prior to bringing his vehicle to a stop due to the fact that these are not the type of lights that a motorist is required to yield to.

Furthermore, the Defendant's vehicle was already stopped at the time the rear amber deck lights were turned on by the officer.

5. No seizure of the Defendant occurred until the officer requested her to perform field sobriety tests.

6. At the point in time that the field sobriety tests were requested, the officer had a reasonable, articulable suspicion that the Defendant was in physical control of a motor vehicle while under the influence of alcohol.

Pick filed a motion to reconsider her motion to suppress, which was also denied. Pick then entered a conditional plea of guilty to the charge of misdemeanor DUI, reserving her right to appeal from the denial of the suppression motion. On Pick's appeal from the denial of the motion to suppress and of the motion to reconsider, the district court affirmed the magistrate's decision.

■ Pick now appeals, contending the magistrate erred in denying her motion to suppress the results of the field sobriety tests following her arrest. She asserts that a seizure occurred when her truck was approached from behind by the sheriff's vehicle with flashing lights, irrespective of the color of those flashing lights. At that time, she asserts, Deputy Bailey did not have a reasonable, articulable suspicion to make a stop, and therefore the seizure was "unconstitutional."[1] She contends that because the seizure was unlawful, any evidence derived therefrom must be suppressed.

■ On appeal from an order of the district court reviewing a determination made by a magistrate, we examine the record of the trial court independently, but with due regard for, the district court's intermediate appellate decision. *State v. Kenner*, 121 Idaho 594, 826 P.2d 1306 (1992); *State v. Schmidt*, 121 Idaho 381, 825 P.2d 104 (Ct.App.1992). In reviewing the denial of a motion to suppress, we defer to the lower court's findings of fact unless they are clearly erroneous. *State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989), *citing State v. Heinen*, 114 Idaho 656, 759 P.2d 947 (Ct.App.1988). However, we exercise free review over the lower court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Id.*

Pick argues that the magistrate erred in finding that she was not seized until the deputy asked her to perform field sobriety tests and to surrender to him her driver's license. She disputes the magistrate's conclusion that the amber flashing lights on the rear deck of the sheriff's vehicle were not the type of lights that a motorist is required to yield to, and she asserts that the officer's use of flashing lights, irrespective of their color or configuration, effected a seizure. This same argument is the one suggested by Justice Bistline in his

---

1. Pick does not identify the constitutional provision on which she bases her contention. We presume she relied upon the proscription of the Fourth Amendment of the United States Constitution against unreasonable seizures. In this case, Pick raises no independent state constitutional challenges.

dissent to *State v. Godwin,* 121 Idaho 491, 497, n. 3, 826 P.2d 452, 458, n. 3 (1992)[2], although Godwin never raised the question to the Court.

■ "Because neither party disputes the facts, we exercise free review in determining whether the police encounter was one permitted under the Fourth Amendment of the Constitution. *State v. Shepherd,* 118 Idaho 121, 795 P.2d 15 (Ct.App.1990)." *State v. Osborne,* 121 Idaho 520, 523, 826 P.2d 481, 485 (Ct.App.1991). The critical inquiry in determining whether an individual is seized within the meaning of the Fourth Amendment is whether, taking into account all of the circumstances surrounding the encounter, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Id.* at 524, 826 P.2d at 485.

■ There is no question but that the officer was authorized to approach Pick's truck and ask questions, even if no obvious criminal activity was afoot. *See State v. Zubizareta,* 122 Idaho 823, 839 P.2d 1237 (Ct.App.1992), *citing State v. McAfee,* 116 Idaho 1007, 783 P.2d 874 (Ct.App.1989). Deputy Bailey testified that he was watching Pick as a possible DUI offender on a tip from a fellow officer. However, unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). When Deputy Bailey asked Pick if she was having car problems and why she was stopped on the highway, Pick was un-der no obligation to answer his questions. The officer showed no sign of authority or force restricting Pick's freedom of movement other than his uniform and the fact that he wanted to talk with her. No seizure occurs until an officer actually restrains the person's liberty by physical force or show of authority. *Zubizareta, supra.* In other words, no seizure occurs until the person submits to the authority exhibited by the officer. *State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992). We disagree with Pick's assertion that, had she not responded to the officer's questions, she risked being cited with a violation of I.C. §§ 49–1419 and 18–705.[3] Deputy Bailey had not given Pick "any lawful order or direction" for which she had willfully failed or refused to comply. Pick had not willfully resisted, delayed or obstructed the officer or given a false report to him.

■ To ensure that the scope of the Fourth Amendment protection does not vary with the state of mind of the individual being approached, we apply the objective "innocent person test" to determine whether a reasonable person would feel free to ignore the police presence and go about his business. *State v. Jordan,* 122 Idaho 771, 774, 839 P.2d 38, 41 (Ct.App.1992), *citing Florida v. Bostick,* 501 U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). As suggested in *Jordan,* we look to whether the restrictions on the subject's freedom of movement were imposed "by a factor independent of police conduct." *Jordan,* 122 Idaho at 774, 839 P.2d at 41. In *Jordan,* the restriction was caused by Jordan's location at a red traffic light when the officer came

---

**2.** "In fact a powerful argument could be made that the seizure commenced at the time Officer Barbieri 'activated his rear deck lights and pulled in behind Godwin's vehicle.'"

**3.** I.C. § 49–1419 provides as follows:
49–1419. **Obedience to traffic direction.**—No person shall willfully fail or refuse to comply with any lawful order or direction of any peace officer, fireman or uniformed adult school crossing guard invested by law with authority to direct, control or regulate traffic.

I.C. § 18–705 provides as follows:
18–705. **Resisting and obstructing officers.**—Every person who willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

to talk to him. In Pick's case, the restriction was a result of Pick's mistaken belief that she had no choice but to comply with the deputy's requests once he had approached her truck, as well as her personal situation in stopping her truck and visiting through the passenger side of her truck with a pedestrian. We hold that Pick's movement was not restricted for Fourth Amendment purposes by the officer's initial contact.

Pick contends that her case is factually similar to *State v. Osborne, supra,* where this Court held that Osborne was seized at the point of the officer's request to produce his license, when he was obligated by statute to surrender his license. *See* I.C. § 49–316. She asserts that two separate statutes, I.C. §§ 49–625 and 49–1404, mandated that she stop and, therefore, she was seized at the approach of the deputy's vehicle. However, she denies that the officer at that time had a reasonable, articulable suspicion that she was driving under the influence, rendering any subsequent test results illegally obtained and inadmissible.

Although these statutes indeed impose an obligation on persons operating motor vehicles to act, these statutes are inapplicable to the factual scenario of Pick's case. Idaho Code § 49–625 prescribes the operation of vehicles approached by authorized emergency or police vehicles and requires a motorist to stop and remain in a position parallel to the nearest edge or curb until the emergency or police vehicle has passed. Idaho Code § 49–1404 provides that it is a misdemeanor for a driver to wilfully flee or attempt to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop. In determining what constitutes an authorized emergency or police vehicle making use of an audible or visible signal, the Idaho Code directs the Court to I.C. § 49–623. It is clear from the reading of that statute, that the amber deck lights do not meet the designated requirements of being visible in a 360 degree arc at a distance of one thousand (1,000) feet. We reiterate that Pick had stopped her truck off the roadway to visit with a friend and that her actions did not originate in response to any signal from an approaching police vehicle. The amber deck lights of the deputy's vehicle were set to flash in order to alert oncoming traffic to the vehicles off the roadway. Factually, the statutes cited by Pick do not apply to her situation.

■ Once Pick answered Deputy Bailey's initial questions, however, the officer detected an odor of alcohol on her breath and noticed that her speech was slurred. These observations, coupled with Pick's admission that she had consumed two beers that evening, justified a detention, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *State v. Cook,* 106 Idaho 209, 677 P.2d 522 (Ct.App.1984), and a request that Pick perform field sobriety tests and surrender her driver's license. We measure the officer's conduct against an objective standard to determine whether the facts available to the officer at the moment of the seizure 'warrant a man of reasonable caution in the belief' that the action taken was appropriate. *State v. Godwin,* 121 Idaho 491, 497, 826 P.2d 452 (1992) (McDevitt, J., specially concurring), *quoting State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974).

Under the circumstances, we concur with the magistrate that "[a]t the point in time when the field sobriety tests were requested, the officer had a reasonable, articulable suspicion that Pick was in physical control of a motor vehicle under the influence of alcohol." We hold that the seizure was reasonable and that Pick did not suffer a violation of her Fourth Amendment right to be free from unreasonable search and seizure. We affirm the magistrate's decision not to suppress the test results which led to Pick's subsequent arrest for DUI.

■ Finally, Pick argues that the magistrate erred in admitting the out-of-court statement communicated to Deputy Bailey by Officer Hutter of the Sandpoint Police Department that Pick had been weaving in

her own lane. Acknowledging that the magistrate had overruled her hearsay objection, Pick argues that the statement was later improperly considered for its truth as it formed part of the substantiation for the magistrate's finding of reasonable and articulable suspicion.

■ The hearsay rule excludes evidence of out-of-court statements only when the statements are offered to prove the truth of the matter asserted by the out-of-court declarant. *Frank v. City of Caldwell*, 99 Idaho 498, 584 P.2d 643 (1978). The magistrate concluded that the statement was being offered not for the truth of the matter asserted, but to explain Deputy Bailey's actions in contacting Pick. Accordingly, the admission of the statement was not error. We also hold that it was not error to include the information supplied by the Officer Hutter as part of the collective knowledge of police officers involved in the investigation to support a finding of reasonable and articulable suspicion. *See State v. Carr*, 123 Idaho 127, 130, 844 P.2d 1377, 1380 (Ct.App.1992); *State v. Cooper*, 119 Idaho 654, 659, 809 P.2d 515, 520 (Ct. App.1991).

Therefore, we affirm the magistrate's order denying Pick's motion to suppress.

WALTERS, C.J., and LANSING, J., concur.