961 P.2d 653

STATE of Idaho, Plaintiff–Respondent–
Cross Appellant,

v.

Darrel Wyatt MORRIS, Defendant–
Appellant–Cross Respondent.

No. 23171.

Court of Appeals of Idaho.

May 28, 1998.

Review Denied Aug. 21, 1998.

Kehne Law Office, Boise, for appellant. Deborah A. Whipple argued.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for respondent. Catherine O. Derden argued.

LANSING, Chief Judge.

Darrel Wyatt Morris appeals from a judgment of conviction and sentence imposed after a jury found him guilty of possession of methamphetamine, § 37–2731(c), and possession of drug paraphernalia, § 37–2734A. On appeal he argues that the district court erred in denying his motion to suppress evidence found in his home. He also asserts that the district court abused its discretion in imposing a unified seven-year sentence with three years determinate.

## FACTS AND PROCEDURE

Evidence at the hearing on Morris's suppression motion revealed the following. Around 11:30 p.m. on May 18, 1995, Boise City police Officer Kyle Christensen arrested a woman for possession of controlled substances. In order to get more favorable treatment, the woman offered information about a drug dealer. She told Officer Christensen that a person named Darrel had called her earlier in the evening and said that he had two pounds of controlled substances and needed her help to sell it. She gave Darrel's address in Boise to Christensen. Acting on this tip, at about 2:30 in the morning of May 19, 1995, Christensen and another Boise police officer, Douglas Doney, went to the specified address, which was Morris's apartment.

The apartment was in a four-unit apartment building located in a residential neighborhood. The building faces west and sits on an unfenced corner lot. At the time of the search, Morris was the tenant in one of the basement apartments. On the north side of the building there were two concrete sidewalks. One was the public sidewalk running along the street at about a "car-length" from the building.[1] The other was a narrower sidewalk directly abutting the building and running parallel to the public sidewalk. This smaller sidewalk starts at the driveway at the rear of the apartment building, goes along the side of the building and past a window in Morris's apartment, and connects with the public sidewalk on the street running in front of the apartment building. This smaller access sidewalk also leads to the entry to Morris's apartment.

Upon arriving at the apartment building, Officer Christensen walked down the access sidewalk, kneeled at the window and looked into Morris's apartment. According to Christensen, the window was not covered and the lights were on in the apartment. The officer saw two men at a table in the kitchen weighing and packaging white powder.[2] Officer Christensen then left the apartment to obtain a search warrant while Officer Doney remained at the scene to keep the apartment under surveillance. While Doney watched, several people entered and left the apartment. A search warrant was issued, and at about 6 a.m. several police officers entered the apartment, arrested Morris, and seized methamphetamine and various drug paraphernalia.

Morris filed a motion to suppress all evidence obtained in execution of the search warrant or as a result of Christensen's observations from outside Morris's window. The motion asserted that the observations were made and the warrant obtained in violation of state and federal constitutional prohibitions

---

1. We take this measurement from the district court's findings of fact on the motion to suppress. Our reading of the record does not yield a more precise assessment of the distance in question.

2. Although he did not state this in his affidavit in support of a search warrant, Officer Christensen testified at the suppression hearing that after his initial observation from the access walk, he stepped back to the public sidewalk. He said that from this vantage point he could not see the faces of the men inside, but could see their hands placing the powder in the baggies. Morris disputed that the table in his apartment could be viewed from this vantage point. The district court's findings of fact do not resolve this factual issue as to whether the observation could be made from the public sidewalk. Therefore we do not rely on this aspect of Christensen's testimony in reaching our decision.

against unreasonable searches. The district court denied the motion.

After a jury trial, Morris was convicted of possession of methamphetamine and possession of drug paraphernalia. The district court imposed a unified seven-year sentence with a three-year minimum term of imprisonment. Morris now appeals to this Court, challenging the denial of his motion to suppress and the reasonableness of his sentence.

## ANALYSIS

### A. Fourth Amendment

Morris first argues that Officer Christensen's observation through the apartment window constituted an illegal search under the Fourth Amendment to the United States Constitution and that the warrant, which was issued based upon evidence gained from that observation, was therefore invalid.

■■■ In reviewing a ruling on a motion to suppress, we defer to the factual findings of the trial court unless they are clearly erroneous, but we freely review the trial court's determination as to whether, on the facts found, constitutional requirements have been satisfied. *State v. Pick,* 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988). The determination of what is reasonable in a search and seizure context is a question of law over which we exercise independent review. *State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993); *Heinen,* 114 Idaho at 658, 759 P.2d at 949.

■■■ The Fourth Amendment promises that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated...." This constitutional guarantee protects the individual's legitimate expectations of privacy against intrusion by the government. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Vasquez,* 129 Idaho 129, 131, 922 P.2d 426, 428 (Ct.App.1996); *State v. Oakley,* 119 Idaho 1006, 1007, 812 P.2d 313, 314 (Ct.App.1991); *State v. Limberhand,* 117 Idaho 456, 460, 788 P.2d 857, 861 (Ct.App.

1990). The protection of a person's home against unreasonable searches extends to the home's "curtilage," the land immediately surrounding and associated with the residence. *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). *See also United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

■■■ When assessing a claim of a Fourth Amendment violation, we may begin by asking whether the complainant exhibited an actual, subjective expectation of privacy and if so, whether that expectation of privacy is one that society is prepared to recognize as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Katz,* 389 U.S. at 360, 88 S.Ct. 507 (Harlan, J. concurring); *State v. Clark,* 124 Idaho 308, 313, 859 P.2d 344, 340 (Ct.App. 1993); *State v. Oakley,* 119 Idaho at 1008, 812 P.2d at 315. The determination whether a particular citizen had a legitimate expectation of privacy depends upon the unique facts of each case. We therefore examine the citizen's efforts to protect his own privacy from observation by the general public, taking into account norms of social conduct and the nature of the premises. *State v. Christensen,* 131 Idaho 143, 953 P.2d 583 (1998); *Clark,* 124 Idaho at 313–317, 859 P.2d at 349–353.

■■■ We conclude that Morris did not manifest an actual, subjective expectation of privacy in this case. The window through which Officer Christensen made his observation faced a public street and a public sidewalk as well as the access sidewalk along the side of the apartment building. This access walk was an area to which the public was impliedly invited. "There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use." *Christensen, supra* (quoting *Clark,* 124 Idaho at 313, 859 P.2d at 349). *See also State v. Rigoulot,* 123 Idaho 267, 272, 846 P.2d 918, 923 (Ct.App.1992). The

window in question was at ground level (not in a window well) and was one to two feet high with a width greater than its height. Morris's interior lights were on and it was dark outside. Morris's apartment was in a multi-unit dwelling, which increases the amount of foot traffic that Morris could reasonably expect to pass by his window and, concomitantly, decreases the amount of privacy he could expect. Nonetheless, Morris left his window uncovered while he conducted his drug-related activity behind that window. These factors militate against a finding that Morris exhibited a subjective expectation of privacy or that any such expectation would have been reasonable.

■■■■ Further, we do not find, as the defense suggests, that Officer Christensen's conduct was overly intrusive. Although in some circumstances kneeling down to look in a window in the early morning hours may violate a citizen's right to privacy, this is not such a case. As one commentator has explained, "[W]hen the officer is lawfully present in a place used by the public (e.g., the hallway of an apartment building), it is a search to engage in conduct which is offensive in its intrusiveness *in the sense that it uncovers that which the resident may fairly be said to have sufficiently protected from scrutiny.*" LAFAVE & ISRAEL, CRIMINAL PROCEDURE, § 3.2, p. 171 (1984) (emphasis added). Thus, our determination of the acceptable degree of government intrusion into a citizen's home is inextricably intertwined with the citizen's actual attempts to safeguard his private affairs. Morris's window opened onto a sidewalk that he could expect to be used by other residents of the building and their visitors at any time of the day or night. He himself had several visitors using the sidewalk to his door on the night in question. Yet, Morris took no steps to cover the window in order to shield his activities from the view of passersby. It is well settled that

"[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz* at 361, 88 S.Ct. 507. We accordingly conclude that Officer Christensen's conduct did not infringe upon a privacy interest protected by the Fourth Amendment.[3]

## B. Article I, Section 17 of the Idaho Constitution

■■■■ Morris next argues that even if Officer Christensen's conduct in this case was not violative of the Fourth Amendment, it violated Morris's rights under art. I, § 17 of the Idaho Constitution. The state constitution, he argues, should be interpreted to provide greater privacy protection in this case than that afforded by the Fourth Amendment. In making this argument, Morris relies principally on *State v. Cada*, 129 Idaho 224, 923 P.2d 469 (Ct.App.1996), *review denied.* There, this Court, in applying art. I, § 17 of the Idaho Constitution, declined to adopt a four-factor analysis enunciated by the United States Supreme Court in *Dunn*, 480 U.S. at 301, 107 S.Ct. 1134 to determine the extent of a home's curtilage. *Cada* at 230–232, 923 P.2d at 475–477.

Morris's reliance on *Cada* is misplaced. First, we note that after our decision in *Cada*, the Idaho Supreme Court adopted a slightly different approach to the analysis of the curtilage issue under the state constitution in *State v. Webb*, 130 Idaho 462, 943 P.2d 52, 57 (1997). Although in *Webb* the Idaho Supreme Court did depart to an extent from the United States Supreme Court's Fourth Amendment analysis with respect to the definition of a home's curtilage, this difference is of no assistance to Morris. Even assuming that Morris's window was on the apartment's curtilage, Christensen's presence on this area of the curtilage, as we have already noted, was not an unconstitutional intrusion because

---

3. Under some circumstances, the mere fact that the intrusion was made late at night may be a factor suggesting that the police conduct was unduly intrusive. *See State v. Cada,* 129 Idaho 224, 233, 923 P.2d 469, 478 (Ct.App.1996), *review denied.* However, the late hour is not such a factor in this case, for the timing was reasonable in view of the nature of police business at hand. Officer Christensen had just received in-

formation that there was present in the apartment a quantity of controlled substances that the occupant of the apartment was trying to sell. If the investigation had been delayed until the next day, the controlled substances might have been gone. Officer Doney's observation of traffic into and out of Morris's apartment while Christensen was seeking a search warrant suggests that this was a very real risk.

the sidewalk was impliedly open to members of the public.

Morris makes no other argument as to how standards under art. I, § 17 should differ from those under the Fourth Amendment. Therefore, we do not further address his argument that the state constitution offers greater protection on the facts of this case. *See State v. Holcomb,* 128 Idaho 296, 303, 912 P.2d 664, 671 (Ct.App.1995).

## C. Alleged Misrepresentations in the Warrant Affidavit

We next consider Morris's argument that evidence obtained as a result of the search warrant should have been suppressed because Officer Christensen misled the magistrate with statements in his affidavit in support of the search warrant.

 When a warrant affidavit includes a false representation or omits relevant facts, the resulting warrant will be deemed invalid if the false representation or omission was made knowingly and intentionally or with reckless disregard for the truth and if the facts wrongfully included or omitted were material to the magistrate's finding of probable cause for issuance of the warrant. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *State v. Kay,* 129 Idaho 507, 511, 927 P.2d 897, 901 (Ct. App.1996); *State v. Sorbel,* 124 Idaho 275, 279, 858 P.2d 814, 818 (Ct.App.1993). A false statement is "material" if without it, probable cause would not have been found. *Id.* An omission of facts is material if there is a substantial probability that, had the omitted information been included, it would have altered the magistrate's determination of probable cause. *Id.* at 279–80, 858 P.2d at 818–19. Whether an omission in an application for a search warrant is material is a question of law over which we exercise free review. *Kay,* 129 Idaho at 512, 927 P.2d at 902; *Sorbel,* 124 Idaho at 280, 858 P.2d at 819.

In his affidavit in application for the search warrant, Officer Christensen stated that he had observed men weighing and packaging a white powdery substance "[t]hrough the basement window, which was not covered by a blind or curtain, and visible from the sidewalk. . . ." Morris argues that this statement was misleading to the magistrate because it implied that Christensen made the observation from a position on a public sidewalk whereas Christensen was on a private access sidewalk and had kneeled down to look through Morris's window. He contends that had the magistrate known this fact the search warrant would not have been issued because the magistrate would have found that the observation violated the Fourth Amendment and the Idaho Constitution.

This argument presupposes that Officer Christensen's acts in looking through Morris's window violated constitutional standards. Otherwise, the alleged misrepresentation would not be material. Because we have heretofore concluded that the observation did not infringe Morris's constitutional rights, Morris's assertion of a *Franks* violation fails.

## D. Sentence

 We next turn to Morris's argument that the district court abused its discretion in imposing a seven-year sentence with a three-year minimum term. Appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion it if is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, giving consideration to the nature of the offense, the character of the offender and the protection

of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

Morris has a lengthy criminal record which includes eight felonies and fourteen misdemeanors. He also has a history of drug addiction and failed attempts at treatment. We note that although Morris had taken some significant steps toward a more productive and crime-free lifestyle, his record shows that he had previously been given numerous rehabilitation opportunities and had repeatedly faltered. The district court determined that the chosen sentence was necessary to meet the primary sentencing goal of protecting society, and we find that decision to be reasonable. The sentence does not represent an abuse of discretion.

## CONCLUSION

The district court did not err in denying Morris's motion to suppress evidence, and we find no abuse of discretion in the sentence imposed. Therefore, the judgment of conviction and sentence are affirmed.

PERRY and SCHWARTZMAN, JJ., concur.