38 P.3d 126

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rex Allen PREWITT, Defendant–Appellant.**

No. 25832.

Court of Appeals of Idaho.

Nov. 19, 2001.

©—63

Molly J. Huskey, Acting State Appellate Public Defender; Sara B. Thomas, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Chief Judge.

Rex Allen Prewitt, convicted of aggravated assault on a police officer, appeals from the district court's denial of his motion to suppress evidence obtained from warrantless searches of areas immediately outside and inside his home, and from the search of a truck pursuant to a warrant. Prewitt also appeals his sentence of ten years, with seven years fixed, as excessive.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 25, 1999, at about 10:00 p.m., Norman Coats, the owner of the Snow River

Sheepskin business in Sandpoint, exited his store to investigate a noise in an adjacent breezeway and observed a man breaking the store window with a short handled pick axe or masonry tool. Coats retrieved his cellular telephone from the store and called 911. Coats ran back outside looking for the man he had seen breaking his store window seconds earlier. Coats saw the man getting into a truck. While speaking to the dispatcher, Coats walked up to the rear of the truck and read aloud the license plate number and described the perpetrator as a slight-framed person of medium height wearing a distinctive English-style cap and a waist-length jacket.

Law enforcement officers traced the license plate number to the home R. & L. Prewitt on Wild Turkey road. Around 11:30 p.m., uniformed Deputies Bill Tilson and Eric Skinner drove separate marked patrol units with flashing amber lights up to the Prewitt residence, located on a private road. Tilson and Skinner had been informed that a Sandpoint police officer had previously called the Prewitt home and left a message asking the resident to call the police department. Upon arriving, Tilson walked by a Ford truck parked in the short driveway just outside Prewitt's single-wide mobile home. Using his flashlight to look inside the truck, Tilson saw what he described as an English-style cap on the passenger seat and the handle of a tool protruding from under the seat.

At the request of the officers, dispatch made a call to the residence. While approaching the front door, Tilson and Skinner heard someone in the home answer and hang up the telephone. While Tilson covered him, Skinner crossed the lighted porch and knocked on the front door, announcing that law enforcement wanted to talk to the occupant. As Prewitt opened the front door and stepped onto the porch, he leveled a revolver at Skinner, and Tilson shot Prewitt in response. After Ponderay Police officers arrived at the scene seventeen minutes later, at 11:49 p.m., Tilson and Skinner conducted a protective sweep of Prewitt's home. An officer taking photographs made a second entrance. A detective entered Prewitt's house at 12:53 to shut Prewitt's barking dog in a bathroom. Later, officers again entered the residence, took measurements, and seized evidence including a holster. Prewitt's truck was impounded and searched pursuant to a warrant.

Prewitt was charged with aggravated assault on a law enforcement officer, I.C. §§ 18–901, 18–905, 18–915. Prewitt was also charged with attempted burglary, but the charge was dismissed at the preliminary hearing stage. Following his arraignment in district court, Prewitt filed several motions to suppress evidence. The district court held a hearing at which Prewitt and the state stipulated to the facts as set forth above. Following the hearing, the district court ruled that the seventeen-minute delay between the shooting and the arrival of other officers and the protective sweep of Prewitt's house for persons possibly lurking inside was not unreasonable and that the sweep itself was justified. The district court ruled that Tilson and Skinner could testify as to what they had seen on their protective sweep, but that evidence seized and measurements taken during subsequent warrantless entries would be suppressed. The court ruled that it would allow the introduction of the holster into evidence.

Prewitt entered an Idaho Criminal Rule 11 guilty plea to the charge of aggravated assault on a peace officer, preserving his right to appeal the denial of his motion to suppress. At sentencing, the district court imposed a unified term of ten years imprisonment with seven years fixed. Prewitt appeals.

## II.

## STANDARD OF REVIEW

In evaluating a ruling on a motion to suppress, we defer to factual findings of the trial court unless they are clearly erroneous, but we freely review the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found. *State v. Morris,* 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998); *State v. Pick,* 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988).

The district court's findings of fact are unchallenged. The reasonableness of a given search or seizure is a question of law requiring our independent review. *Morris,* 131 Idaho at 565, 961 P.2d at 656; *State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993); *Heinen,* 114 Idaho at 658, 759 P.2d at 949. Accordingly, we exercise free review. *See State v. Reese,* 132 Idaho 652, 653, 978 P.2d 212, 213 (1999).

## III.

## DISCUSSION

■ The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution protect "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." *State v. Thompson,* 114 Idaho 746, 749, 760 P.2d 1162, 1165 (1988). Warrantless searches or seizures are presumptively unreasonable, and therefore illegal, unless they come within one of several judicially recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Vega,* 110 Idaho 685, 687, 718 P.2d 598, 600 (Ct.App.1986).

## A. Curtilage

■ The curtilage is that area immediately surrounding and associated with a residence in which a person has a reasonable expectation of privacy. *State v. Webb,* 130 Idaho 462, 943 P.2d 52 (1997). The State admits that by approaching Prewitt's house by way of the driveway and through the covered carport/shelter, Tilson and Skinner were within the curtilage as defined by Idaho courts.

■ Although citizens have a reasonable expectation of privacy in the areas immediately surrounding their homes, not all areas of the curtilage are equal in terms of privacy:

[T]he presence of a police officer within the curtilage does not, ipso facto, result in an unconstitutional intrusion. There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use.

*State v. Clark,* 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct.App.1993). The ability of police to move within the curtilage, however, is not unlimited. "Police officers without a warrant are permitted the same intrusion and the same level of observation as one would expect from a 'reasonably respectful citizen.' " *Id.*

■ The scope of the implied invitation to enter areas of the curtilage that provide direct access to the house may be exceeded where officers employ a particularly intrusive method of viewing. *State v. Cada,* 129 Idaho 224, 232, 923 P.2d 469, 477 (Ct.App.1996). As set forth in *Cada,* there are several factors to be considered in determining whether an officer exceeded the scope of open view, including whether the officer acted secretly or openly, the time of the day or night when the officers approached, and whether the officers attempted to talk with the resident. *Id.* at 233, 923 P.2d at 478. There is a strong aversion to nighttime searches in Idaho law and a surreptitious late night government intrusion onto the driveway of a home without a warrant may also be prohibited although a similar approach in the daytime would not be. *See State v. Lindner,* 100 Idaho 37, 42, 592 P.2d 852, 857 (1979). This, however, was no surreptitious approach.

■ Tilson and Skinner were following up on a reported burglary attempt at about 10:00 p.m. and, having a description of the perpetrator and his truck, traced the truck's license plate to Prewitt's residence. A Sandpoint police officer had previously called the Prewitt home and left a message asking someone there to call the police department. Tilson and Skinner drove over to the Prewitt home in two marked police cars with amber lights flashing. They parked on the road immediately in front of the short drive leading directly to Prewitt's home. When they arrived it was 11:30 p.m., Prewitt's truck was

parked in the driveway and the porch light to the single-wide mobile home was on. The officers had the dispatcher call the home and heard someone answer and hang up the telephone. Skinner then knocked and announced the officers' presence at the front door. *See and compare Cada,* 129 Idaho at 233, 923 P.2d at 478.

■ Prewitt argues that it was unreasonable for the officers to approach his home at night. In *State v. Rigoulot,* 123 Idaho 267, 272, 846 P.2d 918, 923 (Ct.App.1992), this Court held that when police come onto the curtilage of a home for a legitimate purpose and restrict their movements to places where ordinary visitors would be expected to go, their observations from such vantage points are not unlawful. Applying this principle in *Clark,* 124 Idaho at 313, 859 P.2d at 349, we noted that the direct access routes to the house, including parking areas, driveways and pathways to the entry, are areas to which the public is impliedly invited, and that police officers restricting their activity to such areas are permitted the same intrusion and the same level of observation as would be expected from a "reasonably respectful citizen." [1] Accordingly, we held that under this "open view doctrine," police who approached the defendant's house on the driveway and from that vantage point could see through a window and observe drug use activity inside the home, had not conducted a search. Likewise, the observation of the cap and the handle of a tool inside Prewitt's truck was within the open view doctrine articulated in *Rigoulot* and *Clark.* The use of a flashlight to see through the truck window onto the seat and floorboards did not convert the officer's open view observation to the level of a search. *Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512 (1983); *State v. Ramirez,* 121 Idaho 319, 322, 824 P.2d 894, 897 (Ct.App.1991).

We conclude that it was reasonable for Skinner and Tilson to diligently and expeditiously follow up on the burglary report and attempt to speak with someone at the Prewitt home despite the late hour. We therefore hold that Tilson and Skinner's knock and talk at the Prewitt residence was reasonable under both the state and federal constitutions.[2]

## B. Protective Sweep

Prewitt argues that, because there was a seventeen-minute delay between the shooting and the protective sweep, the officers lacked information and inferences that would lead a reasonable and prudent officer to believe that the home might harbor a person who would pose a threat. Thus, he argues that the district court erred in determining that the protective sweep of Prewitt's residence was justified.

One recognized exception to the warrant requirement for governmental searches is the protective sweep, which the United States Supreme Court first addressed in *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In *Buie,* the United States Supreme Court differentiated between two types of protective sweeps pursuant to a lawful arrest. In "Type I" searches, the Court held that incident to a lawful arrest the officers could, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie,* 494 U.S. at 334, 110 S.Ct at 1098, 108 L.Ed.2d at 286. In order to search further—a "Type II" search—"there must be articulable facts which taken together with the rational inferences from those facts, would warrant a reasonable and prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* This Court

1. The fact that the road was posted "private property" is of no constitutional significance in this case. *See State v. Christensen,* 131 Idaho 143, 147–48, 953 P.2d 583, 587–88 (1998).

2. We note that Prewitt's arguments for the suppression of evidence gathered from the search of his truck pursuant to a warrant are not material to the instant charge—aggravated assault on a police officer. Nevertheless, in light of our holding regarding the propriety of the officers' nighttime approach to Prewitt's home, we also conclude that the district court did not err in declining to suppress the evidence observed through the window of Prewitt's truck.

has recently discussed "Type II" sweeps, explaining:

> Buie, Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and related cases establish that the important need of law enforcement personnel to take precautions for the safety of themselves and others at the scene may take precedence over an individual's privacy interest, but the circumstances are narrowly confined to prevent governmental overreaching. The Buie opinion emphasizes that a protective sweep is not constitutionally permissible unless the officer held an objectively reasonable suspicion, based upon articulable facts, that the place to be searched harbors an individual who poses a threat to officers at the scene. Buie, 494 U.S. at 334, 337, 110 S.Ct. at 1098, 1099, 108 L.Ed.2d at 286, 288. The general desire to be sure that no one is hiding in the place searched is not sufficient to meet this requirement. See United States v. Ford, 56 F.3d 265, 270 (D.C.Cir.1995).

State v. Schaffer, 133 Idaho 126, 131, 982 P.2d 961, 966 (Ct.App.1999).

 In this case, Prewitt responded to Skinner's knock and announcement by rushing the front door, jerking it open and pointing a revolver at Skinner. Prewitt was shot in response. The officers secured Prewitt and called for backup—which arrived seventeen minutes later—before conducting a protective sweep of the single-wide mobile home. Under the circumstances, it was reasonable for the officers to delay the sweep until other officers arrived, allowing one to watch Prewitt while another could act as lookout for other persons who might launch a surprise attack.

Additionally, having sustained one attack already and knowing that the telephone listing was for "R. and L. Prewitt," the officers had reasonable and articulable suspicion that someone else might be on the premises and whoever was there might pose a threat to officers. See State v. Revenaugh, 133 Idaho 774, 992 P.2d 769 (1999); State v. Slater, 133 Idaho 882, 994 P.2d 625 (Ct.App.1999); United States v. Hoyos, 892 F.2d 1387, 1397 (9th Cir.1989) (even if a suspect is arrested outside of his residence, a protective sweep is justified if the officers possess the necessary reasonable, articulable suspicion that someone may be on the premises who could either destroy evidence or pose a threat to officers) overruled on other grounds United States v. Ruiz, 257 F.3d 1030 (9th Cir.2001). We also conclude that the passing of seventeen minutes between the shooting and the arrival of other officers did not dispel Tilson and Skinner's reasonable suspicion that someone else might be on the premises that could pose a threat. Although nothing apparently occurred during this period—other than Prewitt's dog barking somewhere in the home—a person could have been inside lying in wait. Thus, we hold that this was a permissible Type II protective sweep—a limited, speedy, and cursory inspection for persons—of the rooms in Prewitt's mobile home. Accordingly, we affirm the district court's denial of Prewitt's motion to suppress the evidence obtained pursuant to the protective sweep and the fruits thereof, except the holster, as set forth below.

At the suppression hearing, the state submitted no evidence to show that Tilson or Skinner actually observed the holster in plain view during the protective sweep. While Tilson's police report, attached to the presentence report, states that Tilson "noticed a black holster on the bed without a weapon" during the initial entry of the home—the protective sweep—the state did not offer Tilson's testimony or the police report at the suppression hearing. However, counsel for Prewitt agreed that the officers had seen the holster during the protective sweep.

 The holster was not seized at that time. Rather, during a fourth warrantless intrusion into the home, this time to seize evidence and take measurements, the officers retrieved the holster. It is the seizure of the holster during this further warrantless entry into the home that is the basis for the suppression of the holster. Under the plain view doctrine, a warrantless seizure can be justified where two requirements are met: (1) the officer must lawfully make an initial intrusion or otherwise properly be in a position to observe a particular area; and (2) it must be immediately apparent that the item observed is evidence of a crime or oth-

erwise subject to seizure. *State v. North-over*, 133 Idaho 655, 663 n. 2, 991 P.2d 380, 388 n. 2 (Ct.App.1999) (citing *State v. Hage-dorn*, 129 Idaho 155, 159, 922 P.2d 1081, 1085 (Ct.App.1996)). This test was not met because the subsequent entry for the purpose of seizing evidence was constitutionally unreasonable, as the district court recognized in suppressing the measurements taken during that subsequent entry.[3] The officers were not acting lawfully when they reentered Prewitt's home to search for and seize evidence that they previously declined to seize during their initial entry. Accordingly, we are constrained to reverse the district court's order denying Prewitt's motion to suppress the holster.

### IV.

### CONCLUSION

The district court's order denying Prewitt's motions to suppress evidence is affirmed, with the exception of that portion related to the holster, which is reversed. The case is now remanded for further proceedings consistent with the Rule 11 plea agreement. We decline, at this time, to rule on the sentencing issue.

Judge LANSING and Judge PERRY Concur.

Chief Judge SCHWARTZMAN, Also Specially Concurring.

I write separately to emphasize that all that is being suppressed on appeal is the holster, a minor piece of evidence that does little, if anything, to weaken the state's aggravated assault case. Moreover, it appears that the holster was observed by police during the initial protective sweep, and thus its physical presence could certainly be testified to. Finally, even if the holster had been introduced into evidence during a trial, its admission would clearly be harmless error. The plea in this case was given to a charge of aggravated assault upon a law enforcement officer, not illegal possession of a holster. It must be remembered that Prewitt was shot on his doorstep with a revolver in his hand.

**3.** The state did not cross-appeal this ruling of the district court.

The holster is simply not material to any disputed issue in this case. Whether our ruling impacts the Rule 11 plea agreement remains to be determined on remand.